THE PEOPLE *ex rel.* Maclay Hoyne, State's Attorney, Petitioner, *vs.* ROBERT M. SWEITZER, County Clerk, Respondent.

*Opinion filed February 12, 1915.*

1. ELECTIONS—*Primary Election law was intended to provide a means for nomination of candidates by political parties.* The Primary Election law of 1910, as amended in 1913, was intended to provide a means whereby each political party may be able to make nominations of candidates of its choice for the various offices therein designated, including candidates for judicial offices, and the provisions of the act must be given effect unless they are incapable of enforcement.

2. SAME—*time when result of primary election must be communicated to officer charged with duty of printing ballots.* Under section 19 of the Ballot act of 1891 the result of all primary elections must be officially communicated to the officer or officers whose duty it is to cause the printing and distribution of the ballots at least five days before the time fixed by law for holding the election.

3. SAME—*when result must be officially determined under sections 56 and 57 of Primary Election law.* In the case of candidates for office who are to be nominated under the Primary Election law and whose certificates of election are to be issued by the Governor, the final canvass of the votes must be made and the result of the primary be officially determined by the State canvassing board in accordance with the provisions of sections 56 and 57 of the Primary Election law.

4. SAME—*effect of amendment of section 6 of Primary Election law in 1913.* The amendment, in 1913, of section 6 of the Primary Election law of 1910, by which amendment the former provision for holding a primary for the nomination of candidates for judicial offices to be filled at an election held on the first Monday of June was omitted, was to leave candidates for such offices under the general provision of such section for a primary to be held three weeks preceding the date of the election.

5. SAME—*provision for a primary three weeks before election cannot be enforced as to judicial offices.* The general provision of section 6 of the Primary Election act, as amended in 1913, for a primary election to be held three weeks preceding the election for the offices coming under such provision, is, in view of the other provisions of the act and section 19 of the Ballot act, incapable of enforcement as to judicial offices, as under such provisions a total of thirty-one days must elapse between the date of the primary and the date of the election for such offices.

6. SAME—*section 6 of the Primary Election law is inoperative and void as applied to judicial offices.* The provision of section 6 of the Primary Election law for a primary three weeks before the election is so inconsistent with and repugnant to the other provisions of such law, and with section 19 of the Ballot act of 1891, as to render it wholly inoperative and void in so far as it attempts to provide for the nomination of candidates for judicial offices.

7. SAME—*the nomination of candidates for judicial offices must be made under the Ballot act of 1891.* As the provision of section 6 of the Primary Election law, as amended in 1913, for a primary three weeks before the election is inoperative and void as applied to judicial offices, the nomination of candidates for such offices must be held to be controlled by the Ballot act of 1891, which has been continued in force except as to those offices which were taken out of the Ballot act by the Primary Election law.

8. SAME—*purpose of provision for nomination of candidates by petition.* The purpose of section 63 of the Primary Election law was to provide a means for the nomination, by petition, of such independent candidates as do not desire to be candidates of political parties, and in view of the expressed intention of the legislature to make the Primary Election act applicable to the nomination of candidates of political parties for judicial offices, the fact that the legislature has failed to make such intention effective does not confine the nominations of candidates for judicial offices to independent nominations by petition, unless it could be said there was no other law under which the nominations could be made.

9. SAME—*Primary Election law did not expressly or by implication repeal the Ballot act of 1891.* The Primary Election law did not, expressly or by implication, repeal the provisions of the Ballot act of 1891 for the nomination of candidates for office, but the effect of such law was to remove from the operation of the Ballot act the nomination of all candidates for elective offices except candidates for township officers in certain townships, but as to such nominations the Ballot act of 1891 was continued in force, and its provisions are applicable to nominations for judicial offices which the Primary Election law attempted to provide for by a method which is incapable of enforcement.

10. CONSTITUTIONAL LAW—*when act of legislature must be declared void.* If an act of the legislature is so vague and uncertain in its terms as to convey no meaning, or if it is so conflicting and inconsistent in its provisions that it cannot be executed, it must be held void; so, also, where there is an absolute contradiction between the principal provisions of the act, or where the act cannot be administered because of its uncertainty or ambiguity.

11. SAME—*courts cannot supply a meaning not ascertainable from the act.* It is the duty of the courts to ascertain the meaning of and give effect to every constitutional enactment of the legislature, but they cannot supply omissions or remedy defects in matters committed to the legislature, nor can they supply the meaning of an act where no meaning can be ascertained therefrom with judicial certainty.

12. SAME—*when act is void though it appears on its face to have a meaning.* An act of the legislature is void where its language appears, on its face, to have a meaning but it is impossible to give it any precise or intelligible application in the circumstances under which it is intended to operate.

13. STATUTES—*the rule as to repeal of former law by later one.* It is only where a statute is expressly repealed or where all cases are removed from under its operation and the statute is thereby abrogated by a later act that the former act is repealed by the later one.

14. SAME—*when provision that an act repealed cannot be revived by repeal of the repealing act does not apply.* Where the effect of a later act is not to entirely abrogate a former one but merely to withdraw from the operation of the earlier act a portion of the cases included within its terms, leaving the earlier act in force as to cases not provided for by the later law, the provision of section 3 of the act relating to the construction of statutes has no application, and the repeal of the later law has the effect of again bringing the cases therein provided for under the operation of the original act.

ORIGINAL petition for *mandamus.*

MACLAY HOYNE, State's Attorney, (MITCHELL D. FOLLANSBEE, and SILAS H. STRAWN, of counsel,) for petitioner.

LEVY MAYER, and ALFRED S. AUSTRIAN, for respondent.

Mr. JUSTICE COOKE delivered the opinion of the court:

This is an original proceeding for *mandamus,* in which it is sought to compel the respondent, as county clerk of Cook county, to prepare a notice, in the manner provided

by the general election laws, at least twenty days before May 17, 1915, of a primary election for the nomination of candidates for the office of judge of the Supreme Court for the seventh district, for the offices of judges of the circuit court of Cook county and for the office of judge of the superior court of Cook county, to be voted for at the election to be held on the first Monday in June, 1915, said primary to be held on the 17th day of May, 1915, which notice shall state the time and place of holding the primary, the hours during which the polls will be open, the offices for which candidates will be nominated and the political parties entitled to participate therein. The petition alleges that the relator is the State's attorney of Cook county; that said Cook county lies within the seventh Supreme Court district; that on the first Monday of June, 1915, an election will be held in said Cook county for the purpose of electing one judge of the Supreme Court, fourteen judges of the circuit court and one judge of the superior court; that the Primary Election act of 1910, as amended in 1913, provides for the nomination of candidates for judicial offices in the manner provided in that act and not otherwise, and that it is the duty of the county clerk, by the provisions of that act, to give notice, at least twenty days before each primary, of the holding of such primary election; that the relator has requested the respondent to prepare and give the notice prescribed by said act for a primary to be held on May 17, 1915, for the nomination of judicial candidates, and that respondent, as such county clerk, has refused to do so, and has announced that he will not at any time prepare and give notice of a primary for the nomination of candidates for judicial offices to be voted for at the election to be held on the first Monday of June, 1915, but declares that he is not required by law to call such primary. To this petition the respondent has interposed a general demurrer, and the case is submitted upon the petition and demurrer.

By provision of our constitution, and also by statute, Cook county is made a part of the seventh Supreme Court district. Section 6 of article 6 of the constitution provides that at the time of voting on the adoption of the constitution a judge of the Supreme Court shall be elected in said seventh district, among others, who shall hold his office for the term of nine years from the first Monday of June, 1870; that the term of office of judges of the Supreme Court elected after the adoption of the constitution shall be nine years, and on the first Monday of June of the year in which the term of any of the judges in office at the adoption of the constitution, or of the judges then elected, shall expire, and every nine years thereafter, there shall be an election for the successor or successors of such judges in the respective districts. Section 10 of chapter 46 of Hurd's Statutes of 1913 provides for the election of a judge in the seventh Supreme Court district on the first Monday of June, 1879, and every nine years thereafter. Section 14 of article 6 of the constitution, and section 12 of chapter 46 of Hurd's Statutes of 1913, provide that the judges of the circuit court shall be elected on the first Monday in June, 1873, and every six years thereafter. Section 23 of article 6 of the constitution provides that Cook county shall be one judicial circuit, and that the superior court of Chicago shall be continued and be called the superior court of Cook county. Section 13 of chapter 46 of Hurd's Statutes of 1913 provides that one judge of said superior court shall be elected on the first Monday in June, 1915, and every six years thereafter. Accordingly there will be voted for by the electors of Cook county in the judicial election to be held on the first Monday in June, 1915, a judge of the Supreme Court, judges of the circuit court and a judge of the superior court.

Prior to the enactment of the Primary Election law of 1910, which was the first valid act on this subject, nominations of candidates for elective offices in this State were

made pursuant to the provisions of an act entitled "An act to provide for the printing and distribution of ballots at public expense, and for the nomination of candidates for public offices, to regulate the manner of holding elections, and to enforce the secrecy of the ballot," commonly known as the Ballot act of 1891, (Laws of 1891, p. 108; Hurd's Stat. 1913, p. 1115;) except such as came within the proviso in section 3 of the said act, which will be hereinafter noted. The Primary Election act of 1910 (Laws of 1909-10,—Special Sess.—p. 47,) provides by section 1 that the nomination of all candidates for all elective judicial offices shall be made in the manner provided in that act, and not otherwise. Section 6 provided, among other things, that "a primary shall be held on the second Tuesday in April in any year in which judges of the Supreme Court, judges of the circuit court, and judges of the superior court of Cook county, or any of them, are to be elected at an election to be held on the first Monday of June of such year for the nomination of candidates for such offices respectively." This section also contained the general provision that "a primary for the nomination for all other officers, nominations for which are required to be made under the provisions of this act, shall be held three weeks preceding the date of the general election for such offices respectively." Various sections of this act were amended in 1913, including sections 1 and 6. (Laws of 1913, p. 310.) By the amended act section 1 provides, as did the original act, that the nomination of all candidates for all elective judicial offices shall be made in the manner provided in the act, and not otherwise. Section 4 provides that the words "judicial office" or "judicial officer," as used in the act, shall be construed to mean judges of the Supreme and circuit courts and judges of the superior court of Cook county. Section 6 of the act as amended omitted the provision above noted for the nomination of candidates for judicial offices at a primary to be held on the second Tuesday in

April in any year in which such officers, or any of them, are to be elected at an election to be held on the first Monday of June of such year, but retained the general provision for a primary for the nomination of candidates for all other offices whose nominations are required to be made by the act, to be held three weeks preceding the date of the election for such offices, respectively.

It was clearly intended by the Primary Election law to provide means whereby each political party may be able to make nominations of candidates of its choice for the various offices therein designated.  It is also apparent that the General Assembly intended to include the nomination of candidates for judicial offices within the provisions of the act.  Whether, pursuant to this intent, the act does provide for the making of such nominations is the question presented for decision.

Section 6 of the Primary Election act of 1910, as amended in 1913, as we have seen, provides that a primary election for the nomination of candidates for all other offices than those for whose nomination specific provisions are therein made and whose nominations are required to be made under the provisions of the act, shall be held three weeks preceding the date of the general election for such offices, respectively.  The language of this section is clear and unambiguous.  It is not claimed that it contravenes any provision of the constitution.  It clearly includes the nomination of candidates for judicial offices by its terms, and if it is capable of enforcement it must be so held, but if it is not capable of enforcement as applied to the nomination of candidates for judicial offices, then it must be held that the Primary Election act, as amended in 1913, fails to provide for the nomination of such candidates.

By excluding the day on which the primary is to be held under the provisions of section 6, *supra,* and the day on which the election is to be held under the provisions of the constitution and statute, the time intervening between

266 – 30

the primary and the election is but twenty days. Section 55 of the Primary Election act allows primary judges forty-eight hours within which to deliver the precinct returns to the clerk from whom the primary ballots were obtained. Section 56, as amended in 1913, provides that as soon as the complete returns are delivered to the proper clerk the returns shall be canvassed; that in cities or villages which have a board of election commissioners the returns shall be canvassed by such board, and that, excepting in the case of the nomination of candidates for city or town offices in such cities, tabulated statements of the returns shall be made to the county clerk; that the returns made to the county clerk shall be canvassed by the officers who are charged by law with the duty of canvassing returns of general elections made to the county clerk; that upon the completion of the canvass of the returns by the county canvassing board it shall make a tabulated statement of the returns for each political party separately, and within two days thereafter the county clerk shall mail to the Secretary of State a certified copy of such tabulated statement for all offices except those for which the county clerk, under the general Election law, issues the certificate of election, and that the State canvassing board shall canvass all certified returns required to be filed with the Secretary of State. Section 57 of the act, as amended in 1913, provides that each of said canvassing boards, respectively, shall, upon completion of the canvass, make proclamation of the result of the primary for each political party and shall make and execute a certificate, and, unless notice of contest shall have been filed with said canvassing board ten days after completion of the canvass, shall file such certificate in the office of the Secretary of State or in the office of the clerk whose duty it is to print the official ballot for the election, as the case may be; that in case notice of contest shall be filed with any canvassing board, such board shall withhold its certificate until a certified copy of the order of the court

hearing such contest shall have been filed with it; that said canvassing board shall, within one day after receiving a certified copy of such order, proceed to finish the canvass of the returns as corrected and make proclamation accordingly. Section 59 of the act provides that when a nomination is made for an office filled by the electors of an entire county, and where it is the duty of the county clerk to prepare the official ballot for the election, it shall be the duty of such clerk to place upon the official ballot to be voted at the election, the names of all candidates certified to him by the Secretary of State, as therein provided, as well as those shown to have been nominated by the certificate of the canvassing board on file in his office, and that not less than fifteen days before an election to fill any office the Secretary of State shall certify to the county clerk of each county within which any of the electors may by law vote for such candidates for such offices, the name and description of each person nominated for such office, as shown by the certificate of the canvassing board on file in his office.

Section 19 of the Ballot act of 1891 provides that judges of elections shall, not less than five days prior to an election, cause to be conspicuously posted in five or more public places in their voting precinct or election district a card of instructions and "a specimen ballot printed on colored paper, containing the names, residence and party or political affiliation of all candidates nominated as herein provided, and to be voted for in such precinct, substantially in the form of the general ballot to be used herein," and that "the officer or officers whose duty it is to cause the printing and distribution of ballots shall have printed a sufficient number of specimen ballots and deliver the same to the judges of election so as to enable said judges to comply with the provisions of this act." It necessarily follows from this provision that the result of all primary elections must be officially communicated to the officer or officers whose duty it is to cause the printing and distribution of

ballots at least five days before the time fixed by law
for holding the election; and as certificates of election for
judges of the Supreme Court, judges of the circuit court
and judges of the superior court of Cook county are issued
by the Governor and not by the county clerk, if candidates
for those offices are to be nominated under the Primary
Election act the final canvass of the votes cast for the re-
spective candidates must be made and the result of the pri-
mary officially determined by the State canvassing board in
accordance with the provisions of sections 56 and 57 of
that act.

A mere inspection of the various provisions of the
act above referred to prescribing the method by which the
nomination of candidates whose votes are finally canvassed
by the State canvassing board must be officially determined
under the Primary Election act, shows that the act is not
capable of enforcement in so far as it attempts to provide
for the nomination of candidates for judicial offices at a
primary to be held three weeks preceding the date of the
election for such. offices. As above noted, judges of elec-
tion are allowed two days within which to deliver the pre-
cinct returns to the county clerk. The latter officer is al-
lowed two days after the completion of the canvass by the
county canvassing board within which to mail to the Sec-
retary of State a certified copy of the tabulated statement of
the returns, and the result of the canvass by the State can-
vassing board does not become final until at least ten days
after its canvass has been completed. In addition to the
time thus specifically allowed by the act for ascertaining
the result of the primary there must necessarily be allowed
at least one ,day for the making of the canvass by the
county canvassing board and at least one day for the mak-
ing of the canvass by the State canvassing board, all of
which makes a total of sixteen days which must intervene
between the date of the primary and the date on which the
result of the primary is officially determined. In addition

to this, the Secretary of State is required to certify to the county clerk the name and description of each person nominated for office as shown by the certificate of the canvassing board on file in his office, not less than fifteen days before the election, making a total of thirty-one days that must elapse between the date of the primary and the date of the election if the provisions of the Primary Election act are to be followed in nominating candidates for judicial offices. This computation does not take into consideration the fact that in counties containing cities having a board of election commissioners more than two days must elapse between the holding of the primary and the canvass by the county canvassing board, nor the fact that delay may be occasioned in the final determination of the result of the primary by the State canvassing board by reason of the filing of notices of contest with it. It is evident that without considering the possibility of delay which may be occasioned by these additional matters, there is not sufficient time between the date of the primary and the election to comply with the various provisions of the act in nominating candidates for judicial offices.

The provision of section 6 above noted is so inconsistent with and repugnant to the other provisions of the Primary Election act which are above pointed out and section 19 of the Ballot act of 1891 as to render the act wholly inoperative in so far as it attempts to provide for the nomination of candidates for judicial offices.

Counsel for relator urge that if it is impossible to comply with the provision of section 59 of the Primary Election act requiring the Secretary of State to certify to the county clerk the name and description of each person nominated for office, as shown by the certificate of the canvassing board on file in his office, at least fifteen days before the election, the court should disregard section 59 in determining whether the act can be applied to the nomination of candidates for judicial offices. The relator's contention in

this regard is, first, that section 59 is merely directory, and that the Secretary of State may lawfully certify to the county clerk the name and description of each person nominated for office any time before the election, provided it reaches the county clerk in time to enable him to have such names printed on the ballots to be used at the election; and second, that if section 59 is mandatory with reference to the time within which the Secretary of State shall certify the names of the successful candidates to the county clerk, it was, so far as the time limit is concerned, repealed by the enactment of amended section 6 of the act in 1913. It is unnecessary to consider either of these contentions. There is no contention made that amended section 6 repealed the provision of section 55 allowing primary judges forty-eight hours within which to deliver the precinct returns to the proper clerk; nor the provision of section 56 requiring the county canvassing board to canvass the returns from the various precincts of the county and allowing the county clerk two days after the completion of such canvass within which to mail to the Secretary of State a certified copy of the tabulated statement of the returns; nor the provision of section 56 requiring the State canvassing board to canvass the certified returns filed with the Secretary of State; nor the provision of section 57 requiring the State canvassing board to withhold its certificate until the expiration of ten days after the completion of the canvass by it; nor the provision of section 19 of the Ballot act of 1891 requiring the county clerk to furnish to the judges of election specimen ballots at least five days before the election. It could not be held, without leading to absurd consequences, that these various provisions of the statutes have by implication been repealed by merely dropping out of section 6 of the original Primary Election act of 1910 the provision relating to the holding of primary elections for the nomination of judicial candidates. In determining whether the Primary act provides for the nomina-

tion of candidates for judicial offices by political parties a
sufficient time in advance to permit the names of such can-
didates to be placed on the ballots to be voted at the elec-
tion, we cannot assume that the time allowed the various
officers and boards by the act within which to perform the
duties imposed upon them will not be entirely consumed.
We cannot assume that any one of such officers or boards
may perform such duties in less time than that allowed by
statute, and thus shorten the time between the holding of
the primary and the time when the county clerk receives
official notification of the name and description of each per-
son nominated for office.   Disregarding entirely the provi-
sion of section 59 of the act with reference to the time
within which the Secretary of State is required to certify
the names of successful candidates to the county clerk, the
provisions of the other sections of the Primary act above
noted render it impossible for the county clerk to receive
official notice of the names of the successful candidates
until within four days of the date fixed for holding the
election, which would be too late to comply with the provi-
sion of section 19 of the Ballot law requiring him to have
printed specimen ballots, which must be posted by the pri-
mary judges at least five days prior to the election.   It fol-
lows that if we should agree with the contention made by
the relator that section 59 is merely directory or that it has
been repealed by amended section 6, it would not affect or
change our conclusion that the provisions of section 6 are
so inconsistent with and repugnant to the other provisions
of the act as to render the act inoperative in so far as it
attempts to provide for the nomination of candidates for
judicial offices.

    If an act of the legislature is so vague and uncertain in
its terms as to convey no meaning, or if it is so conflicting
and inconsistent in its provisions that it cannot be executed,
it is incumbent upon the courts to declare it inoperative and
void.   (*Hilburn* v. *St. Paul, M. & M. Railway Co.* 23

Mont. 229.) Where there is absolute contradiction between the principal provisions of a statute, so that no comprehension of the legislative intent can be reached, the act must be held inoperative and void. (*In re Hendricks,* 60 Kan. 796.) If no judicial certainty can be settled upon as to the meaning of a statute the courts are not at ·liberty to supply one. It must be capable of construction and interpretation, otherwise it will be inoperative and void. (*State* v. *Partlow,* 91 N. C. 550.) Where the court is unable to ascertain the legislative will in a particular section of an act because it is inscrutable in an essential part, it has no recourse but to declare the same void and of no effect. (*Standard Oil Co.* v. *State,* 178 Ala. 400.) A law which cannot be administered because of its uncertainty or ambiguity is void. (*Ward* v. *Ward,* 37 Texas, 389.) While it is the duty of the courts to ascertain the meaning of and give effect to every constitutional enactment of the General Assembly, they cannot supply omissions or remedy defects in matters committed to the legislature. An act so uncertain that its meaning cannot be determined by any known rules of construction cannot be enforced. (*State* v. *West Side Street Railway Co.* 146 Mo. 155.) An act is void where its language appears, on its face, to have a meaning but it is impossible to give it any precise or intelligible application in the circumstances under which it was intended to operate. (26 Am. & Eng. Ency. of Law, 656.) To the same effect are many other authorities.

We do not concur in the view that inasmuch as the Primary Election act provides that the nomination of candidates for judicial offices "shall be made in the manner provided in this act, and not otherwise," the only method provided for the making of such nominations is by the nomination of independent candidates by petition under section 63 of the act, which provides, "nothing in this act contained shall be construed to prevent the nomination of independent candidates by petition as is now or may here-.

after be provided by law." As heretofore stated, it was the evident intent of the legislature in the enactment of a primary election law ·to provide a means whereby each political party would be able to nominate the candidates of its choice at primary elections for all offices included within the scope of the act. Said section 63 was intended only to provide a means for the nomination, by petition, of such independent candidates as did not desire to be the candidates of political parties. Having clearly expressed its intent to make the Primary Election act applicable to the nomination of candidates by the various political parties for judicial offices but having failed to make that intent effective, we are of the opinion that the Primary Election act does not govern the nomination of candidates for judicial offices, and that such nominations are not confined to independent nominations by petition unless it can be said that there is no other law which provides for the making of such nominations by political parties.

The Primary Election act of 1910 expressly repealed all primary election laws theretofore enacted "and all other acts and parts of acts inconsistent with this act," but it did not expressly repeal any part of the said Ballot act of 1891. Section 3 of the Ballot act of 1891 provided: "Any convention of delegates and any caucus or meeting of qualified voters as hereinafter defined, and individual voters to the number and in the manner hereinafter specified, may nominate candidates for public office, whose names shall be placed upon the ballots to be furnished as hereinafter provided." In 1898 this section was amended by changing the word "public" to the word "political," and by adding a proviso excluding from the provisions of the act all counties, cities, villages and incorporated towns in which an act entitled "An act providing for primary elections of delegates to nominating conventions of political parties or organizations, and to promote the purity thereof by regulating the conduct thereof, and to support the privileges of free suf-

frage thereat by prohibiting certain acts and practices in relation thereto, and providing for the punishment thereof," should be in force. The act referred to in this proviso was expressly repealed by the Primary Election act of 1910, so that the proviso became thereafter inoperative. Section 4 of the Ballot act of 1891 then provided the method by which such convention of delegates or such caucus or meeting of qualified voters might nominate candidates for public office, and section 5 provided the method by which individual voters might make independent nominations by petition. This provision with reference to the nomination of candidates by petition is expressly continued in force by said section 63 of the Primary Election act. The provisions of the Ballot act of 1891 with reference to the nomination of candidates by "any convention of delegates or any caucus or meeting of qualified voters" were inconsistent with the provisions of the Primary Election act of 1910 with reference to the nomination of all candidates for elective offices except candidates for township offices in townships which are not co-extensive with cities, incorporated towns or villages, and in so far as these acts were inconsistent the Primary Election act of 1910 superseded the Ballot act of 1891. The Primary Election act expressly provides by section 1 that it shall not apply to school elections and township elections other than in townships co-extensive with cities, incorporated towns or villages. It also provides that it shall not apply to the nomination of candidates for presidential electors and trustees of the University of Illinois. While it makes this specific exception in reference to candidates for presidential electors and trustees of the State University, by section 10 it provides that the State convention of each political party, as provided for by the act, shall have power to make nominations of candidates for presidential electors and for trustees of the University of Illinois. Whether candidates for presidential electors and trustees of the State University may be nomi-

nated only at the State conventions provided for by the
Primary Election act, or whether, as is provided by sec-
tion 1, the act does not apply to such nominations and this
provision of section 10 is therefore merely permissive and
not mandatory, it is not necessary for us to determine. The
act does expressly exempt from its provisions the nomi-
nation of all candidates for township officers in townships
other than those co-extensive with cities, incorporated towns
or villages. The only method provided by law for the
nomination of such candidates for township offices is that
contained in the Ballot act of 1891, and that law, after the
passage of the Primary Election act of 1910, continued in
force for the purpose of making such nominations. The
Primary Election act of 1910 did not, therefore, either
expressly or by implication, repeal the Ballot act of 1891.
The only effect of the passage of the Primary Election act
upon the Ballot act of 1891 was to remove from under
its operation the nomination of all candidates for elective
offices except candidates for township offices in townships
not co-extensive with cities, incorporated towns and vil-
lages. It is only in cases where a statute is expressly re-
pealed or where all cases are removed from under its oper-
ation, and the statute is thereby entirely abrogated by a
later act, that the former act is repealed by the later one.
(*Smith* v. *Hoyt,* 14 Wis. 252; *State* v. *Sawell,* 107 id.
300; *Dykstra* v. *Holden,* 151 Mich. 289; *State* v. *Prather,*
84 Kan. 169; 36 L. R. A. [N. S.] 1084; 26 Am. & Eng.
Ency. of Law, 761.) By the amendment of 1913 the pro-
vision for the holding of a primary to nominate candidates
for judicial offices was stricken out of the Primary Elec-
tion act of 1910, and that act, in so far as it provided for
the nomination of candidates for such offices, was thereby
repealed. The nomination of candidates for such offices
was by such repeal again brought under the operation of
the Ballot act of·1891, under the provisions of which such
nominations had been made prior to the enactment of the

Primary Election act of 1910, and this notwithstanding the provision of section 3 of chapter 131 of Hurd's Statutes of 1913, that "no act or part of an act repealed by the General Assembly shall be deemed to be revived by the repeal of the repealing act." That provision has no application where the effect of an act is not to entirely abrogate a former act, but merely to withdraw from the operation of the earlier act a portion of the cases included within its terms, leaving the earlier act still in force except as to the cases specifically provided by the later one. Under such circumstances the repeal of the later act has the effect of again bringing the cases provided for by it under the operation of the original act. 26 Am. & Eng. Ency. of Law, 761; *Smith* v. *Hoyt, supra; State* v. *Sawell, supra; State* v. *Mines,* 38 W. Va. 125; *Dykstra* v. *Holden, supra; State* v. *Prather, supra.*

In *Smith* v. *Hoyt, supra,* the court said: "Where an act, or part of an act, is repealed, it is not revived by a subsequent repeal of the repealing act. But where a statute merely excepts a particular class of cases from the provisions of a previously existing general law which continues to be in force, the repeal of the excepting statute operates to bring such cases again under the general law. * * * Where the statute creating the exception is repealed, the general statute, which was in force all the time, would then be applicable to all cases according to its terms. And this would be no violation of the rule of construction before referred to, that the repeal of a repealing act should not revive the act repealed. * * * The rule against this relates to absolute repeals,—not to cases where a statute is left in force and all that is done in the way of repeal is to except certain cases from its operation. In such cases the statute does not need to be revived, for it remains in force, and the exception being taken away, the statute is afterwards to be applied without the exception."

In *State* v. *Sawell, supra,* it appears that by an act that was passed in 1893 creating the superior court of Douglas county, jurisdiction concurrent with the circuit court was conferred upon said superior court in prosecutions for misdemeanors; that thereafter the legislature passed an act conferring upon the municipal court of Douglas county exclusive jurisdiction in such cases; that in 1895 the act conferring such exclusive jurisdiction upon the municipal court was repealed, and the question presented to the court was whether the repeal of the act conferring exclusive jurisdiction upon the municipal court in prosecutions for misdemeanors restored the jurisdiction of the superior court in such cases. The court held that the act conferring exclusive jurisdiction in cases of misdemeanor upon the municipal court did not repeal the law conferring jurisdiction in like cases upon the superior court but merely suspended and superseded it, and that by the repeal of the statute conferring exclusive jurisdiction upon the municipal court the jurisdiction of the superior court was restored. In reaching this conclusion it was said: "True, we have the following statutory rule for determining the effect of a repeal of a repealing act: 'No act or part of an act repealed by a subsequent act of the legislature shall be deemed to be revived by the repeal of such repealing act.' But that is contrary to the common law rule, and was early in the history of this court construed as applying only to cases strictly within its provisions,—cases of strict repeal, not to a mere modification of a general law by ingrafting on it an exception covering some particular case or class of cases. In such circumstances it was held that the first act was not repealed within the meaning of the statutory rule of construction, but merely in part suspended, and that a repeal of the legislation creating the suspension removes it, leaving the law in force in its full scope. (*Smith* v. *Hoyt,* 14 Wis. 252.) That rules the question under discussion."

In *State* v. *Mines, supra,* it appears that in 1868 an act was passed by the legislature providing that "every statute of limitations, unless otherwise expressly provided, shall apply to the State, but as to claims heretofore accrued the time shall be computed as commencing when this chapter takes effect." In 1875 the legislature passed an act in relation to the collection of taxes, in which it was provided that "there shall be no limitation to proceedings on judgments on behalf of the State or any claim due the State." In 1881 the legislature revised the chapter in relation to the collection of taxes, leaving out that provision of the act of 1875 declaring that there should be no limitation to proceedings on judgments or claims due the State, and thus repealing such provision. The question presented to the court was whether a money judgment in favor of the State obtained in 1877 was barred by the statute of 1868. The contention of the State was that the act of 1868, so far as it applied to money judgments in favor of the State, was repealed by the act of 1875 and that the later act was repealed by the act of 1881, but that the statute of 1868 was not revived by the repeal of the act of 1875 because of the statutory rule of construction in force in that State, that "when a law which has repealed another is itself repealed, the former law shall not be revived without express words for the purpose," and that the common law rule must therefore be applied. The court held, first, that as there was a repugnancy between the act of 1868 and the act of 1875, the latter act by implication repealed so much of the former act as conflicted with it, or, to be more accurate, the act of 1875 operated to make exceptions to the act of 1868, but that beyond this the later act did not affect the former, which made the State subject to every statute of limitations, such as her right to recover lands or to recover for torts done to her property. Second, that as the act of 1868 was broad and comprehensive enough to em-

brace every statute of limitation and the act of 1875 only changed or modified it to a certain extent, leaving it in all other respects operative, when the act of 1875 was itself repealed, and the exception or limitation was no longer in force, the act of 1868 operated free of the exception.

The following state of facts appears from the opinion in *Dykstra* v. *Holden, supra:* In 1895 the legislature passed an act to provide for the holding of primaries in cities of not less than 15,000 and not over 150,000 inhabitants. That act provided for the nomination of city officers by a convention composed of delegates selected by the electors. It applied to the city of Grand Rapids from its enactment until 1901, when the legislature passed a special act providing for the nomination of candidates for city offices in the city of Grand Rapids by popular vote. That act was replaced in 1903 by an act to provide for the nomination of candidates by popular vote and relating to primary elections in Kent county, in which county the city of Grand Rapids is located. Section 1 of the act of 1903 provided for the nomination of all elective officers for the city of Grand Rapids, excepting members of the school board, by a direct vote of the people. In 1907 said section 1 was amended and all reference to the city officers of the city of Grand Rapids was omitted. The court held that by the repeal, in 1907, of the act of 1903 the act of 1895 became effective so far as the nomination of candidates for city offices in Grand Rapids was concerned. In considering the question whether the rule that a statute once repealed is not revived by the repeal of the repealing act had any bearing upon the case, the court said: "This rule is inapplicable. The local act did not repeal the general law. It merely exempted the city of Grand Rapids from the operation of said general law, and when the local act was repealed there was nothing to prevent the application of the general law, and it did apply. It is said in 26 Am. & Eng.

Ency. of Law, (2d ed.) page 761: 'And so, too, the statutory rule [the rule invoked by respondent] is inapplicable to cases where the original act has been modified, only, and not repealed by the later one, as where an act merely excepts a particular class of cases from the operation of a previously existing general law, which continues to be in force. By the repeal of the act creating the exception, the general statute, which was in force all the time, then becomes applicable to all cases, according to its terms.' "

In *State* v. *Prather, supra,* it appears from the opinion of the court that in 1899 the legislature passed an act relating to the compensation of county officers, section 12 of which related to probate judges, and allowed them to retain fees in amounts proportioned to population, dividing the excess with the county. Section 14 required certain county officers, including probate judges, to keep a record of all fees collected by them. In 1901 an act was passed allowing the probate judges in Shawnee and Wyandotte counties to retain all fees collected by them. This act contained a provision repealing said section 14 and all acts and parts of acts so far as the same were inconsistent with its provisions. In 1909 an act was passed repealing the act of 1901 so far as it applied to Wyandotte county. The State in this proceeding sought, by *mandamus,* to compel the probate judge of Wyandotte county, at the expiration of his term of office, to make a report of the fees collected by him. The court allowed the writ, holding that upon the repeal of the act of 1901, in so far as it related to Wyandotte county, the probate judge of that county was again brought within the provisions of the original act of 1899, and was required to make a report of the fees collected by him and to divide with the county all fees in excess of $3000. In reaching this conclusion the court said: "The defendant insists that to give the law this effect would be to ignore the rule that 'the repeal of a statute does not re-

vive a statute previously repealed.' We think, however, that the act of 1901 was not a repeal of the act of 1899, within the meaning of that rule. Clearly, the legislature did not intend by it literally and absolutely to repeal section 14 of chapter 141, Laws 1899. The defendant recognizes this in his brief by speaking of section 14 as having been repealed as to Wyandotte county by the act of 1901. What was obviously meant was, that the special law, and not the general, should govern in Wyandotte county; in other words, that Wyandotte county should be withdrawn from the operation of the general statute and be governed, as to the matters covered, by the provisions of the special act. When the special act was repealed, in the absence of specific provision on the subject, the general law became operative in Wyandotte county as well as in the rest of the State. This conclusion accords with the spirit and purpose of the statutory rule and with the interpretation elsewhere placed upon it."

To the same effect as the cases just quoted from, are *City of Santa Barbara* v. *Eldred,* 95 Cal. 378, *Pepin* v. *Gage,* 129 Fed. Rep. 657, and *Tilden* v. *Esmeralda County,* 32 Nev. 319.

The Ballot act of 1891 having remained in force except as to such nominations as were excepted from its operation by the Primary Election act of 1910, when that act was amended, in 1913, by striking out the provision for the nomination of all candidates for judicial offices, the Ballot act of 1891 at once became operative so far as nominations for such offices were concerned and will govern in the making of such nominations.

For the reasons given, the demurrer is sustained and the petition dismissed.      *Petition dismissed.*