THE PEOPLE ex rel. D. L. Travis et al. Appellees, vs. EMIL
ROGIER et al. Appellants.

*Opinion filed June 22, 1927.*

1. SCHOOLS—*section 88 of School law is ineffective to create a
township high school district—curative act.* Section 88 of the
School law, providing for the creation of a township high school
district out of a congressional township and parts of surrounding
townships, is ineffective, as there is no provision in said section
for the time and place of the election to organize the district, which
is necessarily a special election, and no provision by whom it shall
be called, to whom the vote shall be returned or by whom it shall
be canvassed; and although the township treasurers in the town-
ships involved voluntarily assume the duties of calling the elec-
tion and giving out the result there is no valid election, and the
curative act of June 2, 1927, cannot validate the district.

2. STATUTES—*courts cannot supply omissions in ineffective stat-
utes.* A law must be complete in all its terms and conditions when
it leaves the legislature, so that everyone may know, by reading
it, what his rights are and how it will operate when put into exe-
cution; and while it is the duty of courts to ascertain the mean-
ing of and give effect to every valid act of the legislature, they
cannot supply omissions or remedy defects in matters committed
to the legislature, and if an act is so uncertain that its meaning can
not be determined by rules of construction it cannot be enforced.

3. ELECTIONS—*what constitutes an election.* An election signi-
fies a choice by a vote of the people and implies a lawful assem-
blage of voters for the purpose of making choice or determining
by vote or ballot; and a mere voluntary assemblage of persons,
though qualified voters, and the expression of their choice upon
any proposition not submitted to them in any authorized way or
by any lawful authority, does not constitute an election.

FARMER, J., took no part.

APPEAL from the Circuit Court of Fayette county; the
Hon. WILLIAM B. WRIGHT, Judge, presiding.

F. M. GUINN, JOHN J. BROWN, and HILL & BULLING-
TON, for appellants.

WILL WELKER, State's Attorney, HOGAN & REESE, and
FRED MYERS, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The question involved in this appeal is the legality of the organization of certain territory into Township High School District No. 194 of the county of Fayette. Upon an information filed on May 14, 1926, by the State's attorney of that county, the circuit court entered a judgment of ouster against the defendants, Emil Rogier and four others, who claimed to have been elected a board of education on May 1 and to have the right to exercise the privileges and franchises of a board of education of such school district, and the defendants appealed.

The cause was heard by the court, by agreement, without a jury, without formal pleadings, upon a stipulation of facts, from which it appeared that the organization of the school district was initiated by a petition addressed to the township treasurer and school trustees of townships 5, 6 and 7 north, range 1 east, and townships 6 and 7 north, range 2 east of the third principal meridian, and townships 5 and 6 north, range 1 west of the third principal meridian, requesting them to call an election to vote for or against a proposition to establish a high school district, according to section 88 of the School law, for the benefit of the inhabitants of a territory containing ninety-two sections, which was described, and consisted of all of township 6 north, range 1 east, and parts of townships 5 north, range 1 east; 7 north, range 1 east; 6 north, range 2 east; 7 north, range 2 east; 5 north, range 1 west; and 6 north, range 1 west. Each of the townships mentioned was a separate school township, and only a part of each township, except township 6 north, range 1 east, was included in the territory of the proposed district. This petition was signed by fifty voters residing in township 6 north, range 1 east, and by no one in the other townships, and was filed before the town meetings of April, 1926, with the treasurer of each township whose territory, or part of

whose territory, was included in the proposed district. Each of the township treasurers called an election in accordance with the prayer of the petition, the election in township 6 north, range 1 west, township 6 north, range 1 east, and township 6 north, range 2 east, being called and held on April 6, 1926, between seven o'clock in the forenoon and five o'clock in the afternoon at polling places within the proposed district, and those in the other four townships being held on April 10, 1926, between one o'clock and four o'clock in the afternoon, at polling places outside the district. After the polls were closed the votes were counted at each poll, the result announced to those present, the ballots strung on wires and tied and with the tally-sheets delivered to the township treasurer, and the result of the election in each township or part of a township was given out by the township treasurer. No other returns than those to the township treasurers were made and no official canvass of the vote of the whole territory has been made. As given out by the treasurer, the vote in township 6, range 1 east, was 1081 for and 646 against the proposition, and the votes in the parts of other townships which voted, 40 for and 418 against.

The appellants contend that the creation of the district was authorized by section 88 of the School law and that it was legally organized under the following provisions of that section: "The inhabitants of any territory composed of parts of adjoining townships or of a congressional township and parts of one or more adjoining townships, may create such territory into a high school district by a petition signed by at least fifty legal voters and an affirmative vote in such territory, and may elect a board of education therefor, as in other high school districts."

Each congressional township is a township for school purposes and constitutes a body corporate, the transaction of whose business is committed to three trustees elected by the voters of the township. The formation of new school

districts and the changing of the boundaries of existing
districts is committed to the trustees of schools, but their
authority in this respect does not extend to high schools.
Provision for the organization and control of township high
schools for the education of the more advanced pupils was
made in the School law of 1872 (Laws of 1871-72, sec. 35,
p. 713,) by the same method as that provided in section 85
of the present School law. In such case the township was
created a school district, of which the trustees of schools
were the directors. In the revision of the School law in
1889 section 38 of article 3 contained the same provisions,
(Laws of 1889, p. 276,) without any substantial change
except the omission of the provision that the trustees of
schools should be directors of the district and the addition
of sections 40 and 41, providing for the election of a town-
ship board of education, which should have the powers and
discharge the duties of directors of the district. The same
provisions were contained in the law of 1909 and are now
in force as section 85 of that law. Section 42 of article 3
of the law of 1889 provided that the voters and trustees
of two or more adjoining townships or parts of townships
might co-operate in the establishment and maintenance of
a high school on such terms as they might, by written agree-
ment made and signed by the board of trustees, enter into.
These were the provisions of the law for the organization
of high school districts until the amendment of section 42
of article 3 in 1901, as follows:

"Sec. 42. Two or more adjoining townships, or two or
more adjoining school districts, whether in the same or dif-
ferent townships, may, upon like petition as required for
township high schools, signed by at least fifty (50) legal
voters in each of said townships or school districts, and
where any such school district contains less than 150 voters,
then such petition shall be signed by at least one-third of
the legal voters of such district, and upon an affirmative
vote in each of such townships or districts, at an election

held pursuant to the provisions of section 38 of this act, establish and maintain, in the same manner as in this act it is provided for township high schools, a high school for the benefit of the inhabitants of the territory described in such petition. And the inhabitants of any territory composed of parts of adjoining townships who are now maintaining a high school and who have elected a board of education, may create such territory a high school district, by a petition of fifty (50) legal voters of such district and by an affirmative vote in such district, and may elect a board of education therefor as in other high school districts. All such high schools may be discontinued in the same manner as township high schools: *Provided,* that any school district having a population of at least two thousand (2000) inhabitants, may in the same manner as herein provided for establishing and maintaining a township high school, establish and maintain a high school for the benefit of the inhabitants of such school district, and elect a board of education therefor with the same powers hereby conferred on township boards of education. All attempted high school districts in which the inhabitants are maintaining a high school and have in good faith elected a board of education substantially as herein required, are hereby declared to be valid and lawful high school districts and the board of education elected therefor legal boards of education." (Laws of 1901, p. 296.)

The last sentence was inserted in the amendment for the purpose of validating the organization of the territory previously mentioned in the section, "composed of parts of adjoining townships who are now maintaining a high school and who have elected a board of education," provision for the organization of which had not been made by any previous law. These were the school districts which constituted the subject matter of section 88 in the revision of the School law in 1909. (Laws of 1909, p. 367.) This section has been twice amended, first in 1911 by striking out of the

first sentence the words, "who are now maintaining a high school and who have elected a board of education;" (Laws of 1911, p. 507;) and second in 1917 by inserting in place of the words stricken out in 1911 the words, "or of a congressional township and parts of one or more adjoining townships," and adding other provisions not necessary to be considered, so that the section now reads, so far as applicable to this case, as has been previously quoted. (Laws of 1917, p. 737.) The amendment of 1911 completely changed the meaning and character of the section from a validating act for previous attempted organizations to an act purporting to authorize future organizations out of parts of adjoining townships, and it was ineffective for the latter purpose because it failed to provide any means for effecting such organization. The amendment of 1917 was equally ineffective for the same reason. So far as this case is concerned, it only added to the description of the territory to which it might apply, "a congressional township."

The section by itself provides no means for effecting its purpose of creating the territory described into a new high school district. It requires an affirmative vote of such territory, but there is no lawful way for taking such a vote. A majority vote of such territory means a majority of the votes cast in favor of the creation of the district at an election lawfully held for that purpose. The election is necessarily a special election, even though it should be held at the same time as a regular election, for there is no general law providing for the election and fixing the time and place for holding it. (Roberts v. Eyman, 304 Ill. 413.) It is manifest that section 88 does not make any provision for holding the election and it makes no reference to any method of determining the time and place. It does not state to whom the petition is to be presented, by whom the election is to be called, how the time and place of holding the election shall be fixed, by whom notice shall be given or how or for how long a time, how or by whom the polling

places shall be determined, to whom the vote shall be returned or by whom it shall be canvassed, and makes no reference to any other statute for means of determining these questions. The territory composing the proposed school district was entirely unorganized. There were no officers of such territory of any character. The statute by section 85 authorized the establishment of high school districts in townships; by section 87 the establishment of high school districts composed of two or more adjoining townships or two or more adjoining school districts; by section 89 the establishment of a township high school by any school district having a population of two thousand. These sections require an affirmative vote in each of the townships or districts, and in each of them the legal machinery exists, and the law provides the officers for conducting the election and fixes the time and place of holding it, the time and manner of giving notice, and the manner of canvassing the vote and declaring and certifying the result. By sections 89a to 89g the statute authorizes the organization of a community high school district out of unorganized territory, prescribes the character of the petition, the officers who shall give notices of the election and the manner and time of doing so, who shall establish the polling places and appoint judges and clerks of election, and to whom the returns shall be made and by whom the votes shall be canvassed. In the unorganized territory out of which it is proposed to create the school district in this case none of these things exist. The petitioners seem to have attempted to follow the directions of section 85 in regard to filing the petition and the subsequent proceedings in regard to it. It was stipulated that the petition was filed with the township treasurer of each township parts of which were included in the proposed district, from which we infer that the petition was signed in seven original copies, one of which was filed with the treasurer of each township, for the seven treasurers did not constitute a joint body with

whom a single petition could be filed. Each of the treas-
urers gave notice of the election as if it was held in his
township, only, on the day of the regular election for school
trustees in the township and at the place where such elec-
tion for trustees was regularly held, with the result that in
three of the townships whose boundaries coincided with
those of towns established under the Township law the elec-
tions were called and held on the first Tuesday in April,
being the sixth day of the month, between the hours of
seven o'clock in the morning and five o'clock in the after-
noon, and in the other townships whose boundaries did not
so correspond the election was called and held on the sec-
ond Saturday of April, being the tenth day of the month,
between the hours of one o'clock and four o'clock in the
afternoon. No returns of the election were made to any-
body except the township treasurer. No canvass of the
vote throughout the territory was made. All these acts
were entirely voluntary on the part of the officers concerned
and were not done in the performance of any official duty.
They were neither directed nor authorized by any statute
but were the private acts of the individuals performing
them and were usurpations of authority, which were bind-
ing on no one and of no effect.

Section 88 is so vague and uncertain in its terms and
so incomplete in its provisions as to furnish no means of
carrying into effect the purpose which it indicates. The
purpose is manifest, but the section fails to provide any
means for its accomplishment. A law must be complete in
all its terms and conditions when it leaves the legislature,
so that everyone may know, by reading the law, what his
rights are and how it will operate when put into execution.
(*People* v. *Election Comrs.* 221 Ill. 9.) It is the duty of
the courts to ascertain the meaning of and give effect to
every constitutional act of the legislature, but they cannot
supply omissions or remedy defects in matters committed to
the legislature. An act so uncertain that its meaning can

not be determined by any known rules of construction can not be enforced. *People* v. *Sweitzer,* 266 Ill. 459; *State* v. *West Side Railway Co.* 146 Mo. 155.

Section 88 furnished no authority for the election held, and the proceedings purporting to have been conducted under it for the organization of the school district were without warrant of law.

This cause was submitted at the February term, 1927. Since that time the General Assembly has passed an act "to legalize the organization of certain township high school districts and to declare an emergency," which was approved by the Governor on June 2, and in accordance with its terms became operative on that date. This act has been called to our attention by the attorneys for the appellants, who contend that it is applicable to the proceedings before us and has the effect of rendering them valid and of making the territory in question a legally organized township high school district. By section 1 it is enacted that "in all cases where a majority of the inhabitants of any contiguous territory voting upon the proposition at an election heretofore called and held for that purpose, have voted in favor of the organization of such territory into a township high school district, and when at a subsequent election called and held for that purpose a board of education has been chosen for such district and such board has organized and performed duties as a board of education, each such election is hereby made legal and valid, and such territory as the same is described in the notices of election on the question of organization is hereby declared legally and validly organized as a township high school district." The act has no such effect as applied to the territory here involved. It applies only to cases where a majority of the inhabitants of any contiguous territory voting upon the proposition at an election called and held for that purpose have voted in favor of the organization of such territory into a township high school district. Election signifies a

choice by a vote of the people and implies a lawful assemblage of voters for the purpose of making choice or determining by vote or ballot. There can be no election where there is no warrant of law for holding it, and the warrant of law must be found in some statute authorizing the calling of it by some lawful authority. A mere voluntary assemblage of persons, though qualified voters, and the expression of their choice upon any proposition not submitted to them in any authorized way or by any lawful authority, does not constitute an election. The requirement of the act in question of a majority vote upon the proposition of organizing a township high school district at an election called and held for that purpose implies some lawful means or authority for calling the election, and no such means or authority existed for calling such an election. The argument which shows that the elections were unauthorized excludes them from the purview of the curative act. No election was called of all the voters in the territory and no election was held in the territory in question. In each of the seven townships involved there was a separate assemblage of voters not called by any lawful authority. These assemblages occurred independently at different places and on different days, some within the territory and some without the territory proposed to be included in the district. No returns of these elections were made to any common officer or authority and no canvass of the total vote was made and no finding or announcement of the result of the election. The words of the act apply to a single election held within the territory by the legal voters residing in the territory called by some official or board authorized to call it, with returns canvassed and result declared by some body or person authorized to canvass and declare, and not to several elections called and held by unauthorized volunteers on different days, at different places, some without and some within the district, with the returns not canvassed and result not declared.

There being no method prescribed by law for holding an election in the territory described and no authority for holding separate elections for different parts of the territory or for holding an election outside the territory, the supposed elections were void and not within the terms of the curative act. The power of the legislature to pass a curative act, and the effect of such act legally passed, are not questioned, but its effect cannot be extended beyond the subject matter brought clearly within its terms.

The judgment of the circuit court was therefore right, and it will be affirmed.        *Judgment affirmed.*

Mr. JUSTICE FARMER took no part in this decision.