(Nos. 21101, 21102.—)
HARRY A. MAYHEW, Appellee, *vs.* OSCAR NELSON, Auditor of Public Accounts, *et al.* Appellants.—ANNIE CRAIG PIGOTT *et al.* Appellees, *vs.* THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS *et al.* Appellants.

*Opinion filed December 17, 1931.*

**382**

OSCAR E. CARLSTROM, Attorney General, and J. J. NEIGER, for appellants.

A. M. FITZGERALD, for appellee Harry A. Mayhew; S. S. DuHAMEL, for appellees Annie Craig Pigott *et al.*

Mr. JUSTICE DeYOUNG delivered the opinion of the court:

Harry A. Mayhew, as a citizen and tax-payer, residing in Sangamon county, filed a bill on September 2, 1931, in the circuit court of that county, against the Governor, the Director of Public Works and Buildings, the chief highway engineer, the Director of Finance, the Auditor of Public Accounts and the State Treasurer, to enjoin certain of the defendants from entering into a contract for the improvement of approximately eight miles of Route No. 157, in Madison county, of the State-wide system of durable hard-surfaced roads, and the other defendants from issu-

ing vouchers and drawing and paying warrants for work done pursuant to such a contract, if made. Shortly thereafter, on September 14, 1931, Annie Craig Pigott and Roberta Pigott, as citizens and tax-payers residing in the village of Oak Park, in Cook county, filed their bill in the same court against the Department of Public Works and Buildings, the Director of Public Works and Buildings, the chief highway engineer and the State superintendent of highways to enjoin the department and officers from entering into a contract with the States Improvement Company for the construction, through the city of Harvey, in Cook county, of two and seven-tenths miles of durable hard-surfaced road upon Route No. 52 of the same State-wide system. The complainants charged that it was proposed to enter into contracts for the two projects in accordance with the provisions of an act entitled "An act regulating wages and hours of work of mechanics and laborers employed under contracts for public works," approved June 20, 1931, in force July 1, 1931, (Laws of 1931, p. 573; Cahill's Stat. 1931, p. 1375; Smith's Stat. 1931, pp. 1413, 1414), and the injunctions were asked upon the ground that the act was unconstitutional. The first bill was dismissed as to the Governor upon his motion. Thereafter a general demurrer was interposed to each bill. The demurrers were overruled, the defendants elected to abide by them and the court, by its decree in each case, found that the act was unconstitutional and granted the relief sought. Direct appeals to this court were consolidated for hearing and determination, and the decision was announced at the October term with the statement that later an opinion would be filed.

The complete text of the several sections of the act in question is as follows:

"Section 1. That every contract to which the State or any political division or subdivision thereof, including departments, counties, townships, villages, municipalities and, also, districts, boards and commissions created pursuant to

law, is a party and which requires or involves the employment of laborers or mechanics in the construction, alteration and / or repair of any public work, for or on behalf of the State or any of its political divisions and subdivisions as aforesaid, shall contain a provision to the effect that the rate of wage for all laborers and mechanics employed by the contractor or any sub-contractor on the public work covered by the contract shall be not less than the prevailing rate of wages for work of a similar nature in the city, town, village, or other civil division of the State in which the public work is located, and that no laborer or mechanic employed on the public work covered by the contract shall be required or permitted to work more than eight hours in any one calendar day, except in cases of extraordinary emergency caused by fire, flood or danger to life and property, and except such extra time as may be necessary in the placing or loading of materials or in the starting or placing of any equipment necessary to permit the working of the eight-hour period, or such extra time as may be required to properly finish or protect any perishable work laid during the above mentioned eight-hour period, or the repairing of or cleaning or housing of necessary equipment, such extra time to be paid for at overtime rates, and a further provision that in case any dispute arises as to what are the prevailing rates of wages for work of a similar nature applicable to the contract which cannot be adjusted by the contracting officer of the State or political division or subdivision thereof as aforesaid, the matter shall be referred to the Director of the Department of Labor for· determination and his decision thereon shall be conclusive on all parties to the contract except as provided in section 4.

"Section 2. It shall be the duty of the public body having authority to contract for the public work in each case to ascertain the prevailing rate of wages as referred to herein, by such investigations as such public body may deem necessary, and to state such prevailing rate of wages in the ad-

vertisement for proposal for the public work. For the purposes of this act, the rate thus ascertained and stated shall be deemed to be the prevailing rate of wages as relating to the particular public work provided for in said proposal; *provided,* that should not less than ten tax-payers of the political subdivision affected in a signed complaint, question the wage so determined, the matter shall be referred to an appeal board appointed in the manner and with the powers set forth in section 4 of this act, and the finding of such appeal board shall immediately be made known to those who are bidding upon the work.

"Section 3. Every contract entered into pursuant to section 1 of this act shall contain a clause to provide that if the contractor or sub-contractor shall refuse or fail to pay not less than the prevailing rate of wage as provided in said section 1, the difference between such prevailing rate of wages and the wages actually paid to the mechanics or laborers shall be deducted from the amount to be paid to the contractor under the terms of the contract. The amount so deducted shall revert to the unappropriated funds of the State, or of the contracting political division or subdivision thereof, as the case may be. *Provided,* that every contract entered into pursuant to this act shall contain a clause providing that for a second violation of such contract by the refusal or neglect to pay not less than the prevailing rate of wages provided for in the contract as required by the act, or for a second violation of that part of the contract relating to working hours as provided in section 1 of the act, the contract on which said violation has occurred shall be declared forfeited. Such violation shall be sufficient cause to bar any contractor under any pre-qualification law or regulation governing contracts for public work.

"Section 4. The Director of Labor may upon his own initiative and shall upon a signed complaint of not less than ten tax-payers investigate any public work to ascer-

tain whether the contract therefor has been made and is being complied with in accord with the provisions of this act. Upon finding any violation of this act or of any contract made hereunder, the Director of Labor shall direct the enforcement of section 3 hereof. *Provided,* that an appeal from any finding and decision of the Director of Labor may be taken within ten days from the date of said finding and decision to an appeal board to be convened on call of the said director. Such appeal board, shall, in each case, consist of three members to be appointed by the Governor from a list of persons to be submitted by the public body which is a party to the contract, by the president of the concerned contractors' group designated by the Director of Public Works and Buildings and by the president of the largest federated body of organized labor in the State designated by the Director of Labor. The finding of all appeal boards shall be subject to such review by the courts as justice may require.

"Section 4*a*. This act shall not apply to the manufacture or transportation, loading or unloading, of articles and materials produced elsewhere than at the site where the public work is under construction, alteration or repair.

"Section 5. This act shall not affect any contract existing on July 1, 1931."

The appellants contend that the act is a valid exercise of the legislative power; that it is complete, certain in its provisions and capable of enforcement and that the circuit court erred in declaring it void. To sustain the decrees, the appellees, on the contrary, insist that the act is vague and uncertain in its terms, incomplete and defective in its provisions and lacking in the means of enforcement and that it is therefore invalid. They also challenge the validity of the act asserting that, in violation of the constitution, it delegates absolute or unlimited and arbitrary power to administrative officers and boards; it compels the State and its subdivisions to give or extend credit to contractors, me-

chanics and laborers engaged in public work under contract; it deprives the tax-payers of the State of property without due process of law; it abridges the right of contractors subject to its provisions to enter into contracts; it confers special privileges upon certain mechanics and laborers and discriminates against other persons pursuing the same vocations; it amends various statutes requiring contracts for public work to be let to the lowest responsible bidders but fails to set forth at length the sections amended, and it creates offices without fixing terms therefor and unduly restricts the right of the Governor to make appointments thereto. In our view it will be necessary to consider only the contentions that the act is void because it is incomplete and uncertain and that it delegates arbitrary power in violation of the fundamental law.

A law must be complete in all its terms and conditions when it leaves the legislature, so that every person may know, by reading the law, what his rights are and how it will operate when put into execution. (*People* v. *Rogier,* 326 Ill. 310; *People* v. *Election Comrs.* 221 id. 9). While it is the duty of the courts to ascertain the meaning of and to give effect to every valid act of the legislature, yet they cannot supply omissions or remedy defects in matters committed to the legislature. (*People* v. *Rogier, supra; People* v. *Sweitzer,* 266 Ill. 459). A legislative act which is so vague, indefinite and uncertain that the courts are unable, by accepted rules of construction, to determine, with any reasonable degree of certainty, what the legislature intended, or which is so incomplete or conflicting and inconsistent in its provisions that it cannot be executed, will be declared to be inoperative and void. (*People* v. *Rogier, supra; People* v. *Sweitzer, supra*). An act is void the language of which appears, on its face, to have a meaning but to which it is impossible to give any precise or intelligible application in the circumstances under which it is intended to operate. *People* v. *Sweitzer, supra.*

The primary purposes of the act under review are to require the payment to laborers and mechanics employed under contracts for public work, of the rates of wages prevailing for similar work in the subdivisions of the State or municipalities in which the respective contracts are to be performed and to limit the hours of work on any one calendar day of the laborers and mechanics so employed. The duty is charged upon the public body having the authority to contract for public work to ascertain the prevailing rate of wages by such investigations as it may deem necessary. The difficulty of ascertaining the meaning of the phrase, "the prevailing rate of wages" is apparent. Whether it means the rate which the most skillful, the average, the least capable or the most numerous group command, the act does not disclose. Even if these varying factors could be brought into harmony, there is no assurance that agreement upon a rate of wages for work of a certain nature as prevailing in a particular community would result. A city council, a board of local improvements and a board of education, in letting contracts for the erection of a municipal building, the paving of a street and the building of a school house respectively, might fix different rates of wages for work of the same character to be performed within the limits of the same city at the same time. Nor are the foregoing the only difficulties encountered in ascertaining the prevailing rate of wages for work of a particular nature. When it is proposed to improve a public highway from a point in unincorporated territory into or through a city, the question arises whether the contractor shall pay the rate of wages fixed for the city, the township or the county, or the rates prescribed for the city and township or the city and county according to the proportions of the entire improvement to be built within their respective confines. Likewise, the question arises with respect to the proposed improvement of a public highway running longitudinally on the line dividing incorporated from unincorporated terri-

tory. In such a situation, the question whether the rates fixed for the city or village and township or county, or if only one, which rate shall apply, presents itself. The act not only prescribes no test or standard by which the prevailing rates of wages in a particular jurisdiction may be ascertained, but when an improvement extending from one subdivision of the State or municipality into or through another or dividing them is contemplated, no guide is offered by which the applicable rate or rates of wages may be determined.

Disputes concerning the prevailing rates of wages which the contracting public officers are unable to adjust are, by the provisions of the act, referred to the Director of Labor for determination. An appeal from any finding and decision of the Director of Labor may be taken within ten days to an appeal board to be convened on the call of the director. In each case the board shall consist of three members appointed by the Governor from a list of persons submitted by the public body which is a party to the contract, by the president of the concerned contractors' group designated by the Director of Public Works and Buildings and by the president of the largest federated body of organized labor in the State designated by the Director of Labor. Upon a complaint signed by not less than ten tax-payers of the political subdivision affected, such an appeal board shall also review the determination of the prevailing wage by the public body having the authority to contract. The findings of all appeal boards, it is provided, shall be subject to such review by the courts as justice may require.

The absence of all direction with respect to the manner in which the Director of Labor shall proceed to determine the disputes referred to him is emphasized in the case of the boards of appeal. The act omits to provide when and where such boards shall meet, whether they shall conduct hearings at which parties interested in the subject matter may appear, whether the attendance of witnesses may be

compelled and whether a record of the proceedings shall be kept. So far as the act is concerned, the procedure before these boards is wholly conjectural. The provision for a review of the finding of an appeal board is likewise incomplete and indefinite. There is no specification of the time within which or the court by which the finding may be reviewed. Whether the court shall allow a trial *de novo* or review some record does not appear. Wanting in the essentials of a statutory review, the provision is unenforceable.

The act prohibits more than eight hours' work during any one calendar day by a laborer or mechanic within its provisions, except in cases of extraordinary emergency caused by fire, flood or danger to life and property, and except such extra time as may be required in placing or loading materials, in starting or placing equipment necessary to permit eight hours of work, to finish or protect perishable work laid during such period and in repairing, cleaning or housing necessary equipment. Whether a contractor may avail himself of one or more of these exceptions, will give rise to differences of opinion. The act, however, omits to designate the person or officer by whom and the manner in which such controversies shall be decided.

The Director of Labor may upon his own initiative and shall upon a signed complaint of not less than ten taxpayers investigate any public work to ascertain whether the contract was made and performed in accordance with the requirements of the act. Upon finding any violation of the act or of the contract, the enforcement of section 3 devolves upon the director. The third section provides that the difference between the prevailing rate of wages and the wages actually paid shall be deducted from the amount owing by the terms of the contract and revert to the unappropriated funds of the contracting public authority. A second violation, either in respect of the prevailing rate of wages or of working hours requires a declaration of the forfeiture of the contract.

It is apparent that important results may flow from the investigations made by the Director of Labor. A subcontractor's failure or refusal, without the contractor's knowledge, to pay wages at the specified rate will involve the contractor in the loss of the difference notwithstanding the latter's complete performance of the contract and his compliance with the statute in every respect. A declaration of the forfeiture of the contract, presumably by the Director of Labor, is made mandatory upon the discovery of a second violation. These consequences may ensue from an investigation of which no notice need be given the contractor and without affording him an opportunity to be heard. The act makes no provision for a hearing and no rules of procedure are prescribed. An *ex parte* investigation, governed by no fixed rules, may deprive a contractor, who is without fault, of his property. Money earned on a contract may be declared to be forfeited without the intervention of legal process or judicial decree. Such a proceeding is wanting in due process, and the legislature may not delegate such arbitrary power to any executive or administrative officer. *People* v. *Coler,* 166 N. Y. 1; *People* v. *Federal Surety Co.* 336 Ill. 472; *People* v. *Fox,* 294 id. 263.

The foregoing review, without considering other objections to the act, sufficiently shows that it is not only uncertain and indefinite in its provisions, but that it is also incomplete and delegates legislative powers by allowing administrative officers to supply many of its substantial features. Accepted rules of construction applied to certain sections will not avail to disclose the legislative intent and courts are powerless to supply the omissions of the act. No person, by reading the act, will know with a reasonable degree of certainty what rights it confers and what duties or obligations it imposes. The act is void.

The decrees of the circuit court are affirmed.

*Decrees affirmed.*