CAROL SPINELLI, Plaintiff-Appellee, v. IMMANUEL EVANGELICAL LUTHERAN CONGREGATION, INC., Defendant-Appellant.

Second District   No. 2—85—0249

Opinion filed June 5, 1986.

James E. Berner, of Caldwell, Berner & Caldwell, of Woodstock; for appellant.

Gregory N. Freerksen and Lawrence A. Poltrock, both of DeJong, Poltrock & Giampietro, of Chicago, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, Immanuel Evangelical Lutheran Congregation, Inc., appeals from an order entered by the circuit court of McHenry County granting summary judgment for plaintiff, Carol Spinelli, on her claim that defendant violated section 2 of "An Act to permit employees to review personnel records ***" (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 2002) (hereinafter the Act) by its refusal to permit plaintiff to inspect certain documents contained in her personnel file.

The material facts are not in dispute and can be summarized as follows. Defendant operates a Christian church and school in Crystal Lake. Plaintiff was employed as a teacher by defendant under a series of one-year contracts from August 1980 to June 1984. On June 15, 1984, plaintiff's latest employment contract expired, and defendant decided not to renew her contract for the following school year. Thereafter, plaintiff requested to see her personnel file pursuant to section 2 of the Act. Defendant permitted plaintiff to inspect her records with the exception of three letters which defendant withheld on the advice of its attorney. The letters, the contents of which are not contained in the record, were written by parents or teachers and were used by defendant in its decision not to renew plaintiff's employment contract. According to William Scholten, the chairman of the day school committee and a member of the school board, the individuals who wrote the letters had made various comments to him regarding plaintiff. Scholten informed the individuals that in order for the school board to consider the statements in reviewing plaintiff's performance, the statements would have to be in writing, and he gave his assurance that their letters would be held in the strictest confidence.

Following defendant's refusal to turn over the letters for inspection, plaintiff instituted this action pursuant to section 12 of the Act

(Ill. Rev. Stat., 1984 Supp., ch. 48, par. 2012)[1]. Both parties moved for summary judgment. Defendant argued that the letters were exempt from disclosure by section 10(c) of the Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 2010(c)). Further, defendant asserted that if the documents were deemed not to be within the foregoing exception, the statute was unconstitutionally vague.

The trial court granted judgment for plaintiff and ordered defendant to turn over the letters for inspection within 14 days. In addition, the court found that defendant's refusal to permit plaintiff access to the documents constituted a wilful and knowing violation of the Act. Therefore, under the authority of section 12 (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 2012), the court awarded plaintiff $200 and attorney fees of $765.

This appeal requires the court to determine whether the letters contained in plaintiff's personnel file are exempt from disclosure and, if not, whether the statute is so vague and indefinite so as to render it unconstitutional. Additionally, the court must decide whether the trial court erred in finding that the defendant's conduct was a wilful and knowing violation of the Act.

Section 2 of the Act states in relevant part:

> "Every employer shall, upon an employee's request *** permit the employee to inspect any personnel documents which are, have been or are intended to be used in determining that employee's qualifications for employment, promotion, transfer, additional compensation, discharge or other disciplinary action, except as provided in Section 10." (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 2002.)

Plaintiff contends this section clearly compels disclosure of the letters since it is not disputed that they were used by defendant in deciding to fire her as a teacher. The simple answer to this argument is that plaintiff was not fired. The record discloses that plaintiff was employed pursuant to a series of one-year contracts, and that at the ex-

---

[1]At the time plaintiff brought this action, section 12 authorized an employee to bring suit directly in the circuit court to compel compliance with the provisions of the Act. Section 12 was subsequently amended by Public Act 84—525. Under the amendment the Director of Labor is responsible for enforcing the Act. (Ill. Rev. Stat. 1985, ch. 48, par. 2012(a).) It now appears that an employee may commence an action in the circuit court only if (1) he or she files a complaint with the Department of Labor; (2) the Department is unable to resolve the dispute by "conference, conciliation, or persuasion"; and (3) the Department thereafter fails to bring an action in the circuit court to redress the violation. (Ill. Rev. Stat. 1985, ch. 48, pars. 2012(b), (c).) Since, however, the amendment became effective January 1, 1986, it does not apply to the present case.

piration of her latest contract defendant reached a decision not to renew her employment for the following school year. Thus, if the letters are subject to disclosure, it must be because they relate to plaintiff's "qualifications for employment." Not knowing the contents of the letters, one must assume that they concern plaintiff's employment qualifications, particularly since defendant readily admits that the letters were used in deciding not to renew plaintiff's employment contract.

Under the unambiguous language of section 2, plaintiff is clearly entitled to inspect the letters in question unless it can be said that they fall within one of the exceptions enumerated in section 10, the pertinent portion of which provides:

> "The right of the employee or the employee's designated representative to inspect his or her personnel records does not apply to:
>
> (a) Letters of reference for that employee.
> * * *
> (c) Materials used by the employer for management planning, including but not limited to judgments, external peer review documents or recommendations concerning future salary increases and other wage treatments, management bonus plans, promotions and job assignments or other comments or ratings used for the employer's planning purposes." (Ill. Rev. Stat., 1984 Supp., ch. 48, pars. 2010(a), (c).)

Defendant takes the position that the documents involved here are letters of reference and therefore are not subject to discovery under subsection (a). In support defendant relies on *Board of Trustees v. Superior Court* (1981), 119 Cal. App. 3d 516, 174 Cal. Rptr. 160, wherein the court defined letters of reference as encompassing not merely communications about an individual who is seeking employment but also written communications by one " 'to whom inquiries as to character or ability can be made.' " 119 Cal. App. 3d 516, 531, 174 Cal. Rptr. 160, 167-68 (quoting Webster's New Collegiate Dictionary 719 (7th ed. 1972)).

An examination of the record in this case, however, reveals that defendant did not raise the letters of reference exception in the trial court. Because an appellant may not argue a theory on appeal different from that argued in the trial court, the question of whether the letters can be classified as letters of reference is not properly before this court. *Richardson v. Economy Fire & Casualty Co.* (1985), 109 Ill. 2d 41, 47.

Defendant next argues that the confidential letters are not subject to inspection by virtue of the "management planning" exception

found in section 10(c). That section prevents an employee from inspecting "[m]aterials used by the employer for management planning," materials which include but are not limited to "judgments, external peer review documents or recommendations concerning future salary increases and other wage treatments, management bonus plans, promotions and job assignments or other comments or ratings used for the employer's planning purposes." (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 2010(c).) Management planning, defendant submits, necessarily entails formulating a program of employment. To support its position, defendant cites *Speight v. People ex rel. County Collector* (1877), 87 Ill. 595, wherein the supreme court construed article IV, section 22, of the Constitution of 1870. That provision prohibited the legislature from passing special legislation concerning "the management of common schools." (Ill. Const. 1870, art. IV, sec. 22.) The word management, the court said, "relates to the conduct of the school in imparting instruction." (87 Ill. 595, 601.) Defendant notes that imparting instruction is done by teachers; therefore, deciding what teachers to employ must be considered part of management planning. Defendant maintains that because the letters involved here were used in formulating its employment plans for the coming year, they properly fall within the purview of management planning.

Plaintiff counters by arguing that the management planning exclusion applies solely to management employees. According to plaintiff, the statute permits an employer to withhold only planning documents relating to managerial employees, not planning documents concerning rank and file employees. She reaches this conclusion by noting that section 10(c) excepts disclosure of materials involving "management bonus plans." Reasoning that the term "management" describes the type of employees to which the exception applies, plaintiff maintains "the whole paragraph refers to planning pertaining to management employees." Further plaintiff points out that if the term management planning were found to apply to materials involving rank and file employees, it would encompass virtually every document contained in an employee's personnel file and would essentially reduce the disclosure requirement in section 2 to a nullity.

The object in construing a statute is to ascertain the intent of the legislature. (*In re Marriage of Freeman* (1985), 106 Ill. 2d 290, 297; *People v. Boykin* (1983), 94 Ill. 2d 138, 141.) If possible, the legislative intent should be determined from the language of the statute; if that language is clear, it must be given effect without resorting to any extrinsic aids for guidance. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277; *People v. Robinson* (1982), 89 Ill. 2d 469, 475-76.)

Where, however, the statute is ambiguous, it is proper to consider various extrinsic aids, including the legislative history (*People v. Beam* (1979), 74 Ill. 2d 240, 243; *C. S. Johnson Co. v. Champaign National Bank* (1984), 126 Ill. App. 3d 508, 510) and the remarks made by the legislators during debate on the legislation (see *Thaxton v. Walton* (1985), 106 Ill. 2d 513, 518; *Client Follow-Up Co. v. Hynes* (1979), 75 Ill. 2d 208, 220; *People v. Thompson* (1972), 3 Ill. App. 3d 684, 689). As to the latter, statements by the sponsor of the legislation are especially significant since "legislators look to the sponsor *** to be particularly well informed about its purpose, meaning, and intended effect." 2A A. Sutherland, Statutory Construction sec. 48.15, at 337 (1984).

In this case, there is no dispute that the intent of the legislature in enacting section 2 was to enable an employee to review his or her personnel file, limited only by the exceptions set forth in section 10. The question here raised concerns the legislative intent with respect to the "management planning" exception found in subsection (c).

An examination of the legislative history of the Act—introduced in the House as House Bill 2035—reveals that section 10(c) as originally drafted did not contain the provision excepting disclosure of "external peer review documents." When the bill was sent to the Senate, two amendments were passed, both of which were subsequently adopted by the House. Senate amendment No. 1 added two words to section 10(c): "evaluations" was inserted between "judgments" and "or" and "tenure" was inserted between "promotions" and "and." (See 1 S.J., 83d Ill. Gen. Assem., 1983 Sess., 2686.) Senator Marovitz, one of the sponsors of the amendment, stated: "This amendment just puts tenured teachers in the exempted section that was asked for by the . . . by the Board of Higher Education." (83d Ill. Gen. Assem., Senate Proceedings, June 16, 1983, at 85.) Senate amendment No. 2, also sponsored by Senator Marovitz, deleted the word "evaluations" and inserted in lieu thereof "external peer review documents." In addition the word "tenure" was deleted. (See 2 S.J., 83d Ill. Gen. Assem., 1983 Sess., 3251.) Senator Marovitz, explaining that the amendment "corrects something that was adopted in an earlier amendment," stated that "it excludes . . . university level peer review documents while still retaining elementary documents." 83d Ill. Gen. Assem., Senate Proceedings, June 23, 1983, at 169.

■ As the foregoing clearly demonstrates, the legislature sought to preclude university-level instructors from gaining access to external peer-review documents contained in their personnel files. This plainly negates plaintiff's assertion that section 10(c) was intended to

prevent only management employees from inspecting materials used by an employer for management planning. Given the unambiguous remarks by Senator Marovitz concerning the intent of the "external peer review documents" exclusion, we think it would be highly inappropriate to disregard those remarks and to substitute a different meaning, particularly since one must assume that the exclusion was adopted based upon Senator Marovitz's representations. Moreover, we note that there is nothing whatsoever in the report of proceedings of the House evincing an intent on the part of that body to limit the section 10(c) exclusion to management employees.

Having concluded that section 10(c) was not meant to preclude only management employees from inspecting materials utilized by an employer for management planning, a serious question arises as to the constitutional validity of the Act. Statutes are presumed to be constitutional, and all reasonable doubts are to be resolved in favor of upholding the legislation. (*North Shore Post No. 21. v. Korzen* (1967), 38 Ill. 2d 231, 233; *People v. Ortega* (1982), 106 Ill. App. 3d 1018, 1023.) Whenever possible, each section, clause, or word should be given some reasonable meaning. (*In re Marriage of Freeman* (1985), 106 Ill. 2d 290, 297.) At the same time, however, statutes in derogation of the common law must be strictly construed in favor of the persons subject to their operation. (*Barthel v. Illinois Central Gulf R.R. Co.* (1978), 74 Ill. 2d 213, 220.) A statute violates due process guarantees when its terms "are so incomplete, vague, indefinite and uncertain that men of ordinary intelligence must necessarily guess at their meaning and differ as to their application." (*Krebs v. Thompson* (1944), 387 Ill. 471, 477; see also *Parks v. Libby-Owens-Ford Glass Co.* (1935), 360 Ill. 130, 140; *Boshuizen v. Thompson & Taylor Co.* (1935), 360 Ill. 160, 169; *Vallat v. Radium Dial Co.* (1935), 360 Ill. 407, 412-13; *Meyerson v. Carter* (1974), 22 Ill. App. 3d 73.) In this regard, the supreme court, in striking down as unconstitutionally vague a statute requiring mechanics and laborers employed under public work contracts to be paid at "the prevailing rate of wages," stated in *Mayhew v. Nelson* (1931), 346 Ill. 381, 387:

> "A law must be complete in all its terms and conditions when it leaves the legislature, so that every person may know, by reading the law, what his rights are and how it will operate when put into execution. [Citations.] While it is the duty of the courts to ascertain the meaning of and to give effect to every valid act of the legislature, yet they cannot supply omissions or remedy defects in matters committed to the legislature. [Citations.] A legislative act which is so vague, indefinite and uncer-

tain that the courts are unable, by accepted rules of construction, to determine, with any reasonable degree of certainty, what the legislature intended, or which is so incomplete or conflicting and inconsistent in its provisions that it cannot be executed, will be declared to be inoperative and void. [Citations.] An act is void the language of which appears, on its face, to have a meaning but to which it is impossible to give any precise or intelligible application in the circumstances under which it is intended to operate."

■ In the case at bar, the Act is so vague and uncertain that it violates the due process rights of employers. Under section 2 an employer is required to permit an employee to inspect his or her personnel file. The employee may then, pursuant to section 6, correct any erroneous information. Yet, the employee's right of inspection is subject to the limitations set forth in section 10, subsection (c) of which authorizes an employer to withhold materials used for management planning. The statute does not define the term "management planning." Although the statute sets forth a partial list of the type of material an employer may refuse to disclose, that list merely adds to the overall ambiguity and uncertainty of the exclusion. What, for example, is an employer permitted to withhold under the term "judgments"? Similarly, what may an employer refuse to disclose under the provision excepting "or other comments or ratings used for the employer's planning purposes"?

Given the broad and ambiguous language of the section, it is apparent that the legislature has failed to provide an adequate guide concerning what information an employer may properly refuse to disclose. Thus, employers are left to guess as to what documents may or may not be withheld, and in doing so they act at their own peril.[2] Attributing the plain and ordinary meaning to the language excepting from disclosure those materials used by an employer for management planning, we do not believe it was unreasonable for defendant to have concluded that the provision excepted documents, such as the letters involved in the instant case, utilized in formulating an employment plan. Of course, virtually every document contained in an employee's personnel file could arguably be said to fall within the purview of "management planning." This obviously leads to an absurd result in that section 10(c) would effectively nullify the disclosure requirement

---

[2]Under the amendment which became effective January 1, 1986, an employer found to have violated the Act is guilty of a petty offense. Ill. Rev. Stat. 1985, ch. 48, par. 2012(e).

of section 2. Although the legislature is presumed not to have intended absurd or illogical consequences (*Board of Education v. Brittin* (1957), 11 Ill. 2d 411, 414), it is simply impossible to determine with any reasonable degree of certainty what the legislature intended by enacting section 10(c).

Moreover, not only is the language of section 10(c) ambiguous, but provisions of that section conflict with those found in section 2. For example, under section 2, an employee is entitled to inspect documents concerning his or her promotion. Yet, under section 10(c), management planning materials which are not subject to inspection include documents used in determining whether an employee is promoted. Similarly, section 2 requires disclosure of documents concerning an employee's transfer, while section 10(c) allows an employer to withhold materials relating to job assignments. Materials used in determining job assignments, given its plain and ordinary meaning, certainly can be said to encompass documents dealing with an employee's transfer.

In light of its ambiguous and inconsistent provisions, we are compelled to conclude that the Act is unconstitutional. Simply stated, an employer of ordinary intelligence by reading the statute has no way of knowing with reasonable certainty what rights it confers and what obligations it imposes. (See *Vallat v. Radium Dial Co.* (1935), 360 Ill. 407, 415.) Since we find the Act to be unconstitutional, it is not necessary to decide whether the trial court erred in finding that defendant's conduct was a wilful and knowing violation of the Act.

For the reasons stated, the judgment entered by the circuit court of McHenry County in favor of plaintiff is reversed.

Reversed.

NASH, P.J., and HOPF, J., concur.