118 Ill.2d 389 (1987)
515 N.E.2d 1222
CAROL SPINELLI
v.
IMMANUEL LUTHERAN EVANGELICAL CONGREGATION, INC., Appellee (Neil F. Hartigan, Attorney General, State of Illinois, Intervenor-Appellant).  LAWRENCE E. KAMRATH, Appellee,
v.
THE BOARD OF EDUCATION OF SCHOOL DISTRICT 150, PEORIA COUNTY, Appellee (Neil F. Hartigan, Attorney General, State of Illinois, Intervenor-Appellant).
Nos. 63802, 64443, 64452.
Supreme Court of Illinois.
Opinion filed November 16, 1987.
*390 *391 *392 *393 Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Eddie Santiago, Assistant Attorney General, of Chicago, of counsel), for intervenor-appellant.
James E. Berner, of Caldwell, Berner & Caldwell, of Woodstock, for appellee.
Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Eddie Santiago, Assistant Attorney General, of Chicago, of counsel), for intervenor-appellant.
Michael Radzilowsky and Deborah A. Dobish, of Chicago (Radzilowsky & Dobish, of counsel), for appellee Lawrence E. Kamrath.
Julian E. Cannell, David J. Walvoord and Laurie M. Judd, of Peoria (Kavanagh, Scully, Sudow, White & Frederick, P.C., of counsel), for appellee Board of Education.
Harold A. Katz, Jerome Schur and Irving M. Friedman, of Katz, Friedman, Schur & Eagle, of Chicago, and Jordan Rossen, of Detroit, Michigan, for amicus curiae UAW.
Sterling M. Ryder and Susan Frederick Rhodes, of Chicago, for amicus curiae Illinois State Board of Education.
Robert F. Forrer and Yolaine Dauphin, of Wilson & McIlvaine, and B. Tucker Olson, all of Chicago, for amicus *394 curiae Illinois Retail Merchants Association.
Judgment affirmed. Judgment affirmed. Judgment reversed; cause remanded.
JUSTICE MORAN delivered the opinion of the court:
In cause No. 63802, the plaintiff, Carol Spinelli, brought an action in the circuit court of McHenry County to compel the defendant, Immanuel Lutheran Evangelical Congregation, Inc., to disclose certain documents in her personnel file. (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 2012 (since amended, see Ill. Rev. Stat. 1985, ch. 48, pars. 2012(b), (c), effective January 1, 1986).) The circuit court granted plaintiff's motion for summary judgment and ordered defendant to produce the documents for inspection. The appellate court reversed, holding that "An Act to permit employees to review personnel records * * *" (Ill. Rev. Stat., 1984 Supp., ch. 48, pars. 2001 through 2012) (the Act) was unconstitutionally vague. (144 Ill. App.3d 325, 331-32.) This court allowed the Attorney General leave to intervene and to appeal as a matter of right because a constitutional question arose for the first time in and as a result of the action of the appellate court. (Ill. Const. 1970, art. VI, sec. 4(c); 107 Ill.2d R. 317.) Spinelli did not file an appellee's brief in this court.
In cause No. 64443 and cause No. 64452, plaintiff, Lawrence E. Kamrath, a tenured public high school teacher, was suspended without pay for five days. He filed an action in the circuit court of Peoria County seeking to invalidate his suspension and to expunge this suspension from his record. Count I of plaintiff's amended complaint alleged that the board of education (the Board) violated the Act by denying his request for certain documents the Board considered in imposing his suspension. Count II alleged that the Board's suspension procedures violated sections 24-11 and 24-12 of the Illinois School Code (the Code) (Ill. Rev. Stat. 1985, ch. 122, pars. 24-11, 24-12). Plaintiff moved for summary judgment on *395 both counts. While his motion was pending, the appellate court, in Spinelli, declared the Act unconstitutional, whereupon the Board filed a cross-motion for summary judgment on count I. The Attorney General intervened to defend the constitutionality of the Act. (107 Ill.2d R. 19; Ill. Rev. Stat. 1985, ch. 110, par. 2-408(c).) Thereafter the circuit court granted the Board's motion for summary judgment on count I on the basis of the appellate court's decision in Spinelli. The court granted Kamrath's motion for summary judgment on count II based on Craddock v. Board of Education (1979), 76 Ill. App.3d 43, aff'd on other grounds (1980), 81 Ill.2d 28, in which the appellate court held that the statutory procedures applicable to the dismissal or removal of a tenured teacher are also applicable to suspensions.
In cause No. 64443, the Attorney General appealed the circuit court's order granting the Board summary judgment on count I directly to this court pursuant to Rule 302(a) (107 Ill.2d R. 302(a)). In cause No. 64452, we allowed the Board leave to appeal directly to this court from the order granting plaintiff's motion for summary judgment on count II pursuant to Rule 302(b) (107 Ill.2d R. 302(b)). This court consolidated all three appeals for disposition.
Three issues are raised for review: (1) whether the Act is unconstitutionally vague, (2) whether a local school board had the authority to suspend a tenured teacher for disciplinary reasons, and (3) if so, whether it must comply with the statutory hearing procedures applicable to the removal or dismissal of a tenured teacher as set forth in section 24-12 of the Code (Ill. Rev. Stat. 1985, ch. 122, par. 24-12).
In cause No. 63802, the relevant facts are undisputed. Immanuel Lutheran Evangelical Congregation, Inc., is a not-for-profit corporation which operates a Christian church and school in Crystal Lake, Illinois. The *396 defendant employed plaintiff as a teacher under a series of one-year contracts from August 1980 through June 1984. When plaintiff's contract for the 1983-84 school year expired on June 15, 1984, the defendant declined to renew her contract for the 1984-85 school year. The defendant informed plaintiff that its decision not to retain her was based, in part, upon letters it had received from parents and teachers and placed in her personnel file.
Plaintiff then requested to inspect her personnel file pursuant to section 2 of the Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 2002). The defendant permitted plaintiff to examine her file, but withheld the letters upon which it had based its decision not to renew her contract because it had assured the individuals who had written the letters that their letters would be held in strict confidence. Consequently, plaintiff filed this action pursuant to section 12 of the Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 2012) to compel production of the letters. The defendant argued that section 10(c) of the Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 2010(c)) exempted the letters from disclosure because they were used for "management planning" or "planning purposes." In the alternative, the defendant contended that the Act was violative of due process because it was so vague and indefinite that a person of ordinary intelligence could not reasonably know what was proscribed. The circuit court rejected the defendant's arguments and entered summary judgment for plaintiff. The appellate court concluded that the Act was so vague and uncertain that it violates the due process rights of employers. 144 Ill. App.3d 325, 332.
In cause No. 64443 and cause No. 64452, the plaintiff, Lawrence E. Kamrath, had been employed by the defendant, the board of education of School District 150, Peoria County (the Board), since the 1967-68 school year. *397 On February 27, 1985, school administrators met with him to discuss allegations that he had verbally abused his students and that he had used profane and vulgar language in his classroom. The administrators showed plaintiff written statements from nine of his students concerning the charges. These statements were unsigned and the students' names had been deleted. Although he was given the opportunity to refute these charges, plaintiff admitted that he used profanity in the classroom. The administrators filed reports and recommendations with the Board summarizing the students' statements.
On March 4, 1985, the Board issued a "Notice of Remedy" pursuant to section 24-12 of the School Code warning plaintiff that if he verbally abused his students, used profane and vulgar language in his classroom or refused to help his students with their assignments in the future, the Board would institute dismissal proceedings and consider suspending him pending a dismissal hearing. The Board also initiated proceedings to suspend plaintiff for five days without pay pursuant to its written policy which provides procedures for suspending certificated teachers without pay for up to 30 days for misconduct that would constitute legal cause for dismissal pursuant to section 10-22.4 of the Code (Ill. Rev. Stat. 1985, ch. 122, par. 10-22.4). The Board sent plaintiff a letter notifying him of the suspension proceedings and the underlying charges. Pursuant to the Board's policy, plaintiff requested a hearing. He further requested that the hearing be conducted before an independent hearing officer rather than the Board. The Board denied this request and, instead, scheduled a hearing before the Board for March 25.
In preparing for the hearing, plaintiff's representative from the Illinois Federation of Teachers, Daniel Walther, reviewed his personnel file and discovered that it did not contain any of the students' statements or *398 other documentation concerning the proposed suspension. Walther met with the Board's attorney and verbally requested information concerning the incidents that led to the suspension proceedings, including copies of the students' written statements which had been taken by school administrators. He also made a written request for this information, but the Board denied both requests.
On March 25, 1986, prior to the hearing, Walther made a written request to exclude the information contained in the students' written statements. The Board took the request under advisement and proceeded with the hearing. Three students testified at the hearing. Each student was shown his or her statement, authenticated the statement and testified to the facts contained therein. After each student testified, his or her statement was given to Walther to facilitate cross-examination. The statements were not, however, shown to the members of the Board during or prior to the hearing. On April 1, 1985, the Board suspended plaintiff without pay for five consecutive school days commencing April 15. On April 18, plaintiff filed an action against the Board in the circuit court of Peoria County challenging the validity of his suspension.
Initially, we consider the constitutionality of the Act. Section 2 mandates:
"Every employer shall * * * permit the employee to inspect any personnel documents which are, have been or are intended to be used in determining that employee's qualifications for employment, promotion, transfer, additional compensation, discharge or other disciplinary action, except as provided in Section 10." Ill. Rev. Stat., 1984 Supp., ch. 48, par. 2002.
As the appellate court correctly noted, section 2 of the Act gives the employee the right to inspect personnel documents unless they fall within one of the exceptions enumerated in section 10, which provides in part:

*399 "The right of the employee or the employee's designated representative to inspect his or her personnel records does not apply to:
(a) Letters of reference for that employee.
* * *
(c) Materials used by the employer for management planning, including but not limited to judgments, external peer review documents or recommendations concerning future salary increases and other wage treatments, management bonus plans, promotions and job assignments or other comments or ratings used for the employer's planning purposes." Ill. Rev. Stat., 1984 Supp., ch. 48, pars. 2010(a), (c).
The Attorney General contends that the appellate court should not have reached the constitutional issue in Spinelli because there was an alternate nonconstitutional ground upon which it could have decided this case. He submits that the documents in issue were "letters of reference," and therefore were exempt from disclosure under section 10(a) of the Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 2010(a)). The defendant raised this argument in the appellate court, but the court held that it had waived the issue by failing to raise it in the circuit court. (144 Ill. App.3d 325, 328.) Nevertheless, the Attorney General urges this court to consider this argument on behalf of the State.
The Attorney General properly notes that this court has interpreted the waiver rule "as `an admonition to the parties, not a limitation upon the jurisdiction of the reviewing court.'" (Schutzenhofer v. Granite City Steel Co. (1982), 93 Ill.2d 208, 211, quoting Hux v. Raben (1967), 38 Ill.2d 223, 224.) He also correctly observes that this court has often held that constitutional questions should not be decided unnecessarily and that a case should be decided on nonconstitutional grounds if possible. (Bismarck Hotel Co. v. Petriko (1961), 21 Ill.2d 481, 485.) These principles, he maintains, should overcome *400 application of the waiver rule, particularly in light of the fact that a private party, and not the Attorney General, conducted this litigation in the trial court.
It is further contended that the State was not aware of the pendency of this action in the circuit court and therefore had no opportunity to intervene and litigate the applicability of the letters of reference exception. The appellate court denied the Attorney General leave to intervene in the appeal. Thus, it is argued, the State has not yet had the opportunity to advance the argument it now submits to this court. We do not believe that the purposes of the waiver rule would be served where, as here, the party against whom it is to operate was not a party to the action in the trial court and was first allowed leave to intervene in this court. We note, however, that after this action was filed, this court adopted Rule 19. (107 Ill.2d R. 19.) This rule recognizes the significance of the State's interest in defending the constitutionality of its laws by requiring a litigant to serve the Attorney General with notice that he intends to challenge the constitutionality of a statute. This notice, in turn, affords the Attorney General the opportunity to petition for leave to intervene in the action in the circuit court. The adoption of Rule 19 should obviate the need for the State's intervention in an action in a reviewing court in future cases. In the case before us, however, the fact remains that since the Attorney General was unaware of the proceedings before the circuit court and was denied leave to intervene in the appellate court, the State has not yet had an opportunity to raise, and therefore cannot be deemed to have waived, the argument it seeks to advance in this court. Consequently, we turn to the question of whether the letters were "letters of reference" within the meaning of section 10(a) of the Act.
Under the facts of this case, the defendant's waiver of this issue by failing to raise it in the trial court does *401 not preclude the State from raising it in this court. Nevertheless, the State, by failing to adequately brief or argue the issue in this court, has waived the issue. (107 Ill.2d R. 341(e)(7).) The Attorney General, in a passing statement in his brief, merely states that "[t]o the extent that the Appellate Court would have been willing to accept the broad definition of letters of reference contained in Board of Trustees v. Superior Court, 119 Cal. App.3d 516, 174 Cal. Rptr. 160 (1981), it should not have reached the constitutional issue." Except for this conclusory statement, the point has not been briefed or otherwise argued and is therefore waived.
Next, the Attorney General argues that the term "management planning" is either clear on its face or is a specialized term which is understood by employers. The defendant, however, correctly notes that the issue before this court is not whether the term "management planning" is susceptible to a reasonably precise definition. Rather, the issue before us is whether the Act affords due process to those who are affected by it. The resolution of this issue turns upon whether a person of ordinary intelligence, when reading the term "management planning" in the context of section 10(c) of the Act and in conjunction with section 2 of the Act, will be able to determine with reasonable certainty which personnel documents are subject to disclosure and which documents are not. Defendant concedes that the letters it withheld from plaintiff's inspection were used in determining whether or not to offer her a teaching contract for the 1984-85 school year. Thus, these letters were used "in determining [plaintiff's] qualification for employment," and would therefore appear to be subject to disclosure pursuant to section 2 of the Act. Given the plain language of section 10(c), however, we believe the defendant could have reasonably concluded that the letters were used for "management planning" with respect *402 to the hiring of teachers for the 1984-85 school year and were therefore exempt from disclosure.
We adopt the following quotation used by the appellate court, which was taken from an earlier decision of this court:
"A law must be complete in all its terms and conditions when it leaves the legislature, so that every person may know, by reading the law, what his rights are and how it will operate when put into execution. (People v. Rogier [(1927)], 326 Ill. 310; People v. Election Comrs. [(1906),] 221 id. 9). While it is the duty of the courts to ascertain the meaning of and to give effect to every valid act of the legislature, yet they cannot supply omissions or remedy defects in matters committed to the legislature. (People v. Rogier, supra; People v. Sweitzer [(1915)], 266 Ill. 459). A legislative act which is so vague, indefinite and uncertain that the courts are unable, by accepted rules of construction, to determine, with any reasonable degree of certainty, what the legislature intended, or which is so incomplete or conflicting and inconsistent in its provisions that it cannot be executed, will be declared to be inoperative and void. (People v. Rogier, supra; People v. Sweitzer, supra). An act is void the language of which appears, on its face, to have a meaning but to which it is impossible to give any precise or intelligible application in the circumstances under which it is intended to operate. People v. Sweitzer, supra." (Emphasis added.) (Mayhew v. Nelson (1931), 346 Ill. 381, 387, quoted in 144 Ill. App.3d 325, 331-32.)
The appellate court further correctly observed that the provisions of section 10(c) conflict with the provisions of section 2 when it stated:
"For example, under section 2, an employee is entitled to inspect documents concerning his or her promotion. Yet, under section 10(c), management planning materials which are not subject to inspection include documents used in determining whether an employee is promoted. Similarly, section 2 requires disclosure of documents concerning an employee's transfer, while section 10(c) allows *403 an employer to withhold materials relating to job assignments. Materials used in determining job assignments, given its plain and ordinary meaning, certainly can be said to encompass documents dealing with an employee's transfer." 144 Ill. App.3d 325, 333.
Given these conflicting and inconsistent provisions, we do not believe that an employer of ordinary intelligence can determine with reasonable certainty which personnel documents are, or are not, subject to disclosure. We therefore agree with the appellate court that the Act is vague and uncertain and, therefore, is unconstitutional in that it violates the due process rights of employers.
We turn next to the question of whether a local school board has the authority to suspend a tenured teacher. As plaintiff correctly notes, a school board has only those powers expressly conferred upon it by the General Assembly and those that are necessary to carry into effect the powers granted by the legislature. (Wesclin Education Association v. Board of Education (1975), 30 Ill. App.3d 67, 75.) In cause No. 64452, plaintiff contends that a school board does not have the power to suspend tenured teachers for disciplinary reasons. The Code does not expressly authorize a school board to suspend a tenured teacher. (Craddock v. Board of Education (1979), 76 Ill. App.3d 43, 44.) Plaintiff further argues that there is no implied power to suspend. The Board, on the other hand, submits it derives its power to suspend from section 10-20.5 of the Code (Ill. Rev. Stat. 1985, ch. 122, par. 10-20.5). In Craddock v. Board of Education (1980), 81 Ill.2d 28, 31, this court expressly declined to decide whether a school board may impose a disciplinary suspension. Two districts of the appellate court, however, have recognized a school board's authority to do so.
*404 In Craddock v. Board of Education (1979), 76 Ill. App.3d 43, a majority of the court held that the term "dismissal," as used in section 24-12 of the School Code, which sets forth the procedures a school board must follow to remove or dismiss a tenured teacher, encompasses not only permanent dismissals, but also temporary dismissals or suspensions. (76 Ill. App.3d 43, 45.) The court then concluded that since the power to suspend was derived from section 24-12, a school board must comply with the procedures set forth in that section when it suspends a teacher. In Kearns v. Board of Education of North Palos Elementary School District No. 117 (1979), 73 Ill. App.3d 907, however, the court rejected this approach. Relying upon the reasoning of the dissent in Craddock, the court concluded that section 24-12 contemplated only permanent termination of employment and therefore did not authorize suspensions. (73 Ill. App.3d 907, 911-12.) Instead, the court, citing the dissent in Craddock, found that the power to suspend is an implied power necessary to carry into effect the duty imposed upon the Board by section 10-20.5 "[t]o adopt and enforce all necessary rules for the management and government of the public schools of their district." Ill. Rev. Stat. 1985, ch. 122, par. 10-20.5.
Plaintiff argues that section 10-20.5 is not an independent grant of power. Instead, he contends that section merely authorizes the Board to promulgate rules and regulations concerning those areas in which the General Assembly has expressly authorized it to act through other provisions of the Code. We find plaintiff's argument to be without merit. Section 10-20 of the Code provides that "[t]he school board has the duties enumerated in Sections 10-20.1 through 10-20.27." (Ill. Rev. Stat. 1985, ch. 122, par. 10-20.) Pursuant to section 10-20.5, local school boards have the express duty "[t]o adopt and enforce all necessary rules for the management *405 and government of the public schools of their district." (Ill. Rev. Stat. 1985, ch. 122, par. 10-20.5.) We agree with and adopt the following reasoning of the dissent in Craddock:
"If the Board is to adequately manage and govern, as it is obligated to do by this section, the rules and regulations which it adopts, for teachers and students and other personnel, must have some means of enforcement which are effective. There is implied in this obligation to make rules and regulations, and to enforce them, a power in the board to mete out discipline to those who violate the rules and regulations. Enforcement envisions effective sanctions of some sort. If that were not the case, the power to make rules would indeed be a hollow one and effective management and government could not be accomplished. Thus, it is from this section of the School Code that the power to make temporary disciplinary suspensions arises." Craddock v. Board of Education (1979), 76 Ill. App.3d 43, 49 (Alloy, J., dissenting).
Having concluded that the Board derived its authority to suspend plaintiff from section 10-20.5 of the Code, we turn to the question of whether it was required to follow the statutory hearing procedures set forth in section 24-12. Section 24-12 prescribes hearing procedures for the "removal or dismissal" of tenured teachers. As the dissent in Craddock correctly observed, these terms suggest permanent termination of employment rather than a temporary suspension. (76 Ill. App.3d 43, 48 (Alloy, J., dissenting).) Accordingly, we agree with the conclusion of the dissent in Craddock that the procedural requirements of section 24-12 are not applicable when the board suspends a tenured teacher. (See 76 Ill. App.3d 43, 50 (Alloy, J., dissenting).) Moreover, we note that the General Assembly used the words "suspend" and "suspension" when necessary to express its intent. In addition to detailing the hearing procedures applicable to dismissals or removals, section 24-12 provides that "the *406 board may suspend the teacher pending the hearing, but if acquitted the teacher shall not suffer the loss of any salary by reason of the suspension." (Ill. Rev. Stat. 1985, ch. 122, par. 24-12.) We therefore agree with the the court in Kearns that "if the legislature intended suspension to be treated the same as dismissals, it would have said so." (Kearns v. Board of Education (1979), 73 Ill. App.3d 907, 912.) The General Assembly failed, however, to prescribe procedures for suspension hearings. Accordingly, we hold that the Board was not required to afford plaintiff a hearing which satisfied the procedural requirements of section 24-12 of the Code.
Although tenured teachers who face suspension are not entitled to a section 24-12 hearing, they are nevertheless entitled to procedural due process. In Wilson v. Bishop (1980), 82 Ill.2d 364, 369, this court noted that "[t]he United States Supreme Court has emphasized that due process of law, at a minimum, prohibits the deprivation of property without providing notice and an opportunity for a hearing appropriate to the nature of the case." The Supreme Court has stated that "`the timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved.'" (Goss v. Lopez (1975), 419 U.S. 565, 579, 42 L.Ed.2d 725, 737, 95 S.Ct. 729, 738-39; Wilson v. Bishop (1980), 82 Ill.2d 364, 369.) In the case before us, the plaintiff's interest is to avoid unfair or mistaken suspension and the adverse consequences which could follow such a suspension. The defendant's interests are to effectively manage its schools and their employees and to avoid undue administrative burdens and expenses.
The defendant's suspension policy requires that the teacher be given written notice of the charges upon which the suspension proceedings are based. After receiving this notice, the teacher may request a hearing *407 before the Board, which must be scheduled no more than 20 days from the date it is requested. The policy allows the teacher to be represented by an attorney, to cross-examine witnesses and to present evidence on his own behalf. We believe these procedures were commensurate with the sanction the defendant sought to impose upon plaintiff and, therefore, satisfied the requirements of procedural due process.
For the foregoing reasons, in cause No. 63802, the judgment of the appellate court is affirmed; in cause No. 64443, the judgment of the circuit court is affirmed; and, in cause No. 64452, the judgment of the circuit court is reversed and the cause is remanded to the circuit court of Peoria County for further proceedings.
63802  Judgment affirmed.
64443  Judgment affirmed.
64452  Judgment reversed; cause remanded.
JUSTICE CUNNINGHAM took no part in the consideration or decision of this case.