2019 IL App (1st) 182011

No. 1-18-2011

Second Division
Rehearing denied October 23, 2020
Opinion filed November 24, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| OLAYINKA MOHORN-MINTAH, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | Petition for Administrative Review |
| THE BOARD OF EDUCATION OF THE | ) | from the Board of Education of the |
| CITY OF CHICAGO, JANICE JACKSON, | ) | City of Chicago |
| Chief Executive Officer, and THE ILLINOIS | ) | |
| STATE BOARD OF EDUCATION, | ) | Board Order Nos. 18-0822-RS4 |
| | ) |                 18-0822-EX15 |
|     Respondents. | ) | |
| | ) | |

_____

JUSTICE COBBS delivered the judgment of the court, with opinion.
Presiding Justice Howse and Justice McBride concurred in the judgment and
opinion.

**OPINION**

¶ 1　　This action stems from dismissal charges filed against Olayinka Mohorn-Mintah. Following the dismissal hearing, the Board of Education of the City of Chicago (Board) adopted the findings of the hearing officer and the recommendation to not dismiss Mohorn-Mintah, but it sanctioned her for misconduct by reducing her back pay by 50% and issuing a Warning Resolution. On appeal, Mohorn-Mintah contends that the Board exceeded its

statutory authority in sanctioning her and violated her procedural due process rights. For the following reasons, we affirm the Board's decision.

¶ 2                                    I. BACKGROUND

¶ 3        On December 9, 2016, the chief executive officer of Chicago Public Schools (CPS) approved dismissal charges against Mohorn-Mintah, a tenured teacher at TEAM Englewood Community Academy, pursuant to section 34-85 of the School Code (105 ILCS 5/34-85 (West 2016)). The notice of the charges informed Mohorn-Mintah that the Board had requested she be suspended without pay pending a dismissal hearing. The charges listed in the notice included violations of several "Corrective Action Categories" as set forth in a misconduct/discipline matrix (Chicago Public Schools, *Misconduct/Discipline Matrix*, https://www.cps.edu/globalassets/cps-pages/staff/employee-engagement/disciplinematrix.pdf (last visited Nov. 10, 2020) [https://perma.cc/DFW6-U5J3]), Board rule 4-4(j) (prohibiting employees from engaging in acts of violence in the workplace, including threats of physical force); violations of the Illinois State Board of Education rules and regulations under the Illinois Educator Code of Ethics and the Standards for All Illinois Teachers (Illinois State Board of Education, *Illinois Educator Code of Ethics*, https://www.isbe.net/Documents/educator_COE_0311.pdf (last visited Nov. 10, 2020) [https://perma.cc/4ZAT-YJUD]; see generally 23 Ill. Adm. Code part 24); and also conduct unbecoming a CPS employee. The charges specified that Mohorn-Mintah threatened to fight one of her students twice on the same day and that she yelled at two coworkers during the 2015-16 school year.

¶ 4        Mohorn-Mintah requested a dismissal hearing before a mutually selected hearing officer, and one was held on August 16, 2017. At the hearing, the Board called four witnesses, whom

Mohorn-Mintah cross-examined, and Mohorn-Mintah called four witnesses, including herself, to testify on her behalf. Because the facts underlying the charges are not in dispute on appeal, we briefly summarize the evidence presented at the hearing below.

¶ 5        Mohorn-Mintah was employed by CPS as a teacher from 2004 to 2016. During those 12 years, she taught at five different schools. From September 2013 to October 2016, she taught science classes at TEAM Englewood Community Academy (TEAM Englewood).

¶ 6        During the 2015-16 school year, D.T., an eleventh-grade student at TEAM Englewood, was in Mohorn-Mintah's science class. On January 4, 2016, D.T. arrived late to class, and Mohorn-Mintah instructed her to stand by the door to await instructions from Mohorn-Mintah, which was the customary policy. D.T. refused to do so, and another teacher, Maria Tsampis, entered the classroom after she heard yelling. Mohorn-Mintah asked D.T. more than once "Do you want to fight me?" Neither of them touched the other. D.T. then left the classroom with Tsampis and went to the counselor's office. Later, Mohorn-Mintah came to the counselor's office and again asked D.T. if she wanted to fight.

¶ 7        There was also some testimony that, prior to the incident with D.T., there was a confrontation between Mohorn-Mintah and a security officer, which took place sometime between October 2015 and January 2016. It resulted in a "mediation circle" for restorative purposes. Mohorn-Mintah also testified that she had never received any de-escalation training.

¶ 8        The parties submitted memoranda following the hearing. On June 29, 2018, the hearing officer issued its findings of fact and recommendation. The hearing officer found that Mohorn-Mintah made the "unwarranted aggressive and provocative comments" to D.T. and that the comments were taunts, rather than threats, to fight. The hearing officer concluded that there was no indication that Mohorn-Mintah actually intended to fight D.T. and that the Board failed

to prove misconduct toward coworkers. The hearing officer recommended against dismissal and left it to the Board "to consider other responses to her conduct." Mohorn-Mintah submitted exceptions to these findings to the Board.

¶ 9        On August 22, 2018, the Board issued its order, adopting the hearing officer's findings but additionally finding that Mohorn-Mintah falsely testified that D.T. instigated the altercation. The Board also adopted the recommendation that there was no cause to discharge Mohorn-Mintah because her conduct was not "irremediable." The Board then determined that her conduct and her false testimony warranted a warning resolution and a 50% reduction in the back pay owed to her. The resolution warned her to refrain from using aggressive and hostile language and engaging in physical altercations with students and that she needed to use de-escalation techniques in the future. The resolution also stated that "[d]ismissal will be requested if you fail to comply with the directives for improvement ***."

¶ 10       This appeal for administrative review of the Board's decision followed.

¶ 11                                    II. ANALYSIS

¶ 12       On appeal, Mohorn-Mintah argues that the Board exceeded its statutory authority when it disciplined her with a 50% reduction of back pay for three reasons: (1) section 34-85 of the School Code requires an award of back pay if the teacher is not discharged; (2) section 34-85 of the School Code does not provide for disciplinary action other than dismissal; and (3) she was not given sufficient procedural due process in her notice of these proceedings.

¶ 13       The statute at issue, section 34-85 of the School Code, outlines the procedure for termination proceedings of tenured teachers. Under the School Code, for cities with over 500,000 inhabitants (Chicago), a tenured teacher may only be removed for cause. 105 ILCS 5/34-85(a) (West 2016). During the pendency of the termination proceedings, the School Code

permits the Board to suspend the teacher without pay, but this pay must be reinstated if the teacher is not dismissed. *Id.* § 34-85(a)(2). To initiate dismissal proceedings under section 34-85, the local superintendent must approve the charges and specifications against the teacher. *Id.* § 34-85(a)(1). Within 10 days of that approval, the teacher must be served with written notice of the charges and specifications against her. *Id.* The teacher may then request a hearing before a mutually selected hearing officer. *Id.* § 34-85(a)(2)-(3). The agreed upon hearing officer conducts the dismissal hearing and determines whether CPS has proved by a preponderance of the evidence the specifications and charges supporting her dismissal. See *Beggs v. Board of Education of Murphysboro Community Unit School District No. 186*, 2016 IL 120236, ¶ 53.

¶ 14    After the hearing, the hearing officer will issue its findings along with a recommendation as to whether the teacher should be dismissed. 105 ILCS 5/34-85(a)(6) (West 2016). The Board then has 45 days to make its decision. *Id.* § 34-85(a)(7). "The Board is vested with the final administrative decision on teacher removal, and it is to this decision that we are to defer." *Raitzik v. Board of Education of the City of Chicago*, 356 Ill. App. 3d 813, 832 (2005); see 105 ILCS 5/34-85 (West 2016). "[I]f the teacher or principal charged is not dismissed based on the charges, he or she must be made whole for lost earnings, less setoffs for mitigation." 105 ILCS 5/34-85(a)(2) (West 2016). Judicial review of the Board's decision is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2016)), but review must be initiated in the appellate court. 105 ILCS 5/34-85(a)(8) (West 2016). We do not review the hearing officer's decision but rather that of the Board. *Beggs*, 2016 IL 120236, ¶ 61.

¶ 15    With this procedure in mind, we turn to Mohorn-Mintah's contentions that the Board did not have the authority to reduce her back pay and that the Board did not give adequate notice.

¶ 16                                A. Statutory Authority

¶ 17        "The proper standard of review in cases involving administrative review depends upon whether the question presented is one of fact, one of law, or a mixed question of fact and law." *Id.* ¶ 50. An agency's findings of fact are considered *prima facie* true and must only be reversed if they are against the manifest weight of the evidence. *Id.* Questions of law are reviewed under the *de novo* standard. *Id.* Mixed questions of law and fact, where we analyze the legal effect of a given set of facts, are reviewed under the clearly erroneous standard. *Id.* Here, Mohorn-Mintah asks this court to construe section 34-85 of the School Code; thus, we review the issues of statutory authority *de novo*.

¶ 18        Mohorn-Mintah asserts that section 34-85 requires the Board to wholly reinstate her back pay and that it does not provide for sanctions other than dismissal for cause. In essence, she contends that the Board acted outside of its authority expressed in section 34-85. Conversely, the Board contends that its decision to reduce her back pay essentially served as an unpaid suspension, which it had the authority to impose based on our supreme court's decision in *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.*, 118 Ill. 2d 389 (1987). After a review of the statute and the relevant case law, we agree with the Board.

¶ 19        Administrative agencies have purely statutory powers and possess no inherent or common-law powers. *My Baps Construction Corp. v. City of Chicago*, 2017 IL App (1st) 161020, ¶ 67. Any power or authority of an agency must come from the statutory provisions under which the agency was created or "by fair implication and intendment from those express provisions, as an incident to achieving the objectives for which the agency was created." *Albazzaz v. Department of Professional Regulation*, 314 Ill. App. 3d 97, 104 (2000). "An express grant of power to an administrative body or officer includes the authority to do all that is reasonably

necessary to execute that power or to perform the duty specifically conferred." *O'Grady v. Cook County Sheriff's Merit Board*, 260 Ill. App. 3d 529, 534-35 (1994). In order to ascertain the Board's authority in this situation, we must construe the relevant statutory provision.

¶ 20    A court's primary goal in statutory interpretation is to ascertain the intent of the legislature. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 421 (2002). "The best signal of legislative intent is the language used in the statute, which must be given its plain and ordinary meaning." *Beggs*, 2016 IL 120236, ¶ 52. "When the plain language of the statute is clear and unambiguous, the legislative intent that is discernable from this language must prevail, and no resort to other tools of statutory construction is necessary." *Land*, 202 Ill. 2d at 421-22. Though, in accordance with *de novo* review, this court is not bound by an agency's interpretation of a statute, "we recognize that where an agency is charged with the administration and enforcement of a statute, the agency is in a good position to make informed judgments upon the issues, based on its experience and expertise." *Ikpoh v. Department of Professional Regulation*, 338 Ill. App. 3d 918, 924 (2003). Thus, we accord some deference to the agency's own interpretation. *Id.*

¶ 21    Section 34-85 does not contain any references or allusions to sanctions other than dismissal for cause; however, it does provide for the suspension of teachers pending the dismissal outcome and the award of back pay if dismissal is not warranted. 105 ILCS 5/34-85(a)(2) (West 2016). Thus, this statutory provision clearly and unambiguously does not provide for any other type of sanction, such as a suspension without pay or a reduction in back pay as occurred here.

¶ 22    However, our supreme court in *Spinelli* determined that the Board has the authority to impose disciplinary action not otherwise expressly provided pursuant to section 10-20.5 of the

School Code (*id.* § 10-20.5). That case consolidated two separate actions, that of Carol Spinelli and that of Lawrence E. Kamrath (*Spinelli*, 118 Ill. 2d at 394-95); we are only concerned with the court's analysis in the latter. Kamrath was accused of verbally abusing his students and using profane and vulgar language in his classroom. *Id.* at 397. Following a hearing, the school board suspended Kamrath without pay for five days. *Id.* at 398. Kamrath challenged the suspension, contending that the School Code provided neither express nor implied authority to a school board to suspend a tenured teacher. *Id.* at 403.

¶ 23    The court acknowledged that a school board has only those powers expressly conferred upon it by the General Assembly but, nonetheless, rejected Kamrath's argument that the school board lacked power to suspend him. *Id.* at 403, 405. In so doing, the court expressly adopted the reasoning in the dissent in *Craddock v. Board of Education of Annawan Community Unit School District No. 226*, 76 Ill. App. 3d 43, 49 (1979) (Alloy, J., dissenting). *Spinelli*, 118 Ill. 2d at 405. The court held that the school board possesses those express powers in the School Code as well as those implied powers necessary to effect them. *Id.* at 403. Specifically, it held that the school board derived its authority to suspend Kamrath without pay from section 10-20.5 of the School Code, which gives the school board authority " '[t]o adopt and enforce all necessary rules for the management and government of the public schools of their district.' " *Id.* at 404-05. Quoting Justice Alloy's dissent, the court stated:

" 'If the Board is to adequately manage and govern, as it is obligated to do by this section, the rules and regulations which it adopts, for teachers and students and other personnel, must have some means of enforcement which are effective. There is implied in this obligation to make rules and regulations, and to enforce them, a power in the board to mete out discipline to those who violate the rules and regulations. Enforcement envisions

effective sanctions of some sort. If that were not the case, the power to make rules would indeed be a hollow one and effective management and government could not be accomplished.' " *Id.* at 405 (quoting *Craddock*, 76 Ill. App. 3d at 49 (Alloy, J., dissenting)).

¶ 24    Finally, the court continued that the procedural requirements for dismissal for cause are not applicable when the school board suspends a teacher. *Id.* at 406. And, although the legislature did not include any procedures for suspensions in the School Code, teachers were still entitled to procedural due process prior to suspension. *Id.*

¶ 25    Recently, a panel of this court released an opinion in *Board of Education of the City of Chicago v. Moore*, 2019 IL App (1st) 182391, *appeal allowed*, No. 125785 (Ill. May 27, 2020). That case involves nearly identical facts to the case here where the Board notified Moore that dismissal proceedings would be instituted against her pursuant to section 34-85 and, after a hearing, though the hearing officer recommended Moore be reinstated, the Board deducted a 90-day time-served suspension from her back pay. *Id.* ¶¶ 3-5. Just as in this case, Moore argued that the School Code requires that the Board must make her whole if she is not dismissed. *Id.* ¶ 8. Contrarily, the Board argued that it has the power under the School Code to impose a suspension without pay. *Id.* A panel of this court ultimately agreed with Moore and held that the Board lacked authority to impose suspension without pay in lieu of termination and that the Board's arguments were impermissible *post-hoc* justifications. *Id.* ¶¶ 20-22.

¶ 26    We believe that the supreme court's decision in *Spinelli* is controlling. Thus, we decline to follow *Moore*. See *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008) ("[T]he opinion of one district, division, or panel of the appellate court is not binding on other districts, divisions, or panels.").

¶ 27   Here, the Board accepted the hearing officer's finding that dismissal was not warranted but also accepted the hearing officer's findings that there was some misconduct when Mohorn-Mintah verbally confronted D.T. Based on the findings of misconduct, the Board disciplined Mohorn-Mintah with a warning resolution and an unpaid suspension via a reduction in back pay. The Board's decision to suspend Mohorn-Mintah without pay was within its statutory authority under section 10-20.5 of the School Code. The Board's implied power to discipline teachers would be severely hampered if it were limited only to dismissal. See *Wilson v. Department of Professional Regulation*, 317 Ill. App. 3d 57, 64 (2000) ("Administrative agencies are given wide latitude in fulfilling their duties."). As we have already stated that the Board has the power to suspend tenured teachers, we do not believe that the intent of the legislature was to require the Board to engage in separate procedures for each disciplinary action regarding the same conduct or to prohibit the Board from issuing a lesser sanction where misconduct occurred but dismissal was not warranted. Rather, "administrative officers may validly exercise discretion to accomplish in detail what is legislatively authorized in general terms." *Lake County Board of Review v. Property Tax Appeal Board*, 119 Ill. 2d 419, 428 (1988). Thus, the Board's action to discipline Mohorn-Mintah following a dismissal hearing was a reasonable means of accomplishing their broad purpose to manage the public schools of Chicago.

¶ 28   Nonetheless, Mohorn-Mintah asserts that the Board could not proceed under section 34-85, which is specifically only applicable to dismissals, and then ultimately issue a suspension under a different statutory provision. But Mohorn-Mintah does not cite any authority for the proposition that the Board may only discipline her under the particular section of the School Code that it cites in the dismissal charges, and we can find no case law to support such a

proposition either. That particular issue is more suited to our discussion of her procedural due process claim: whether she was given adequate notice of the potential disciplinary action. Consequently, we find that the Board had implied authority to suspend or impose other sanctions on Mohorn-Mintah pursuant to the School Code and that the Board acted within the scope of that authority in reducing her back pay.

¶ 29                                B. Due Process

¶ 30        Mohorn-Mintah contends that the imposition of a reduction in back pay violated her right to procedural due process because she did not have notice that it was a potential disciplinary action. The Board argues that she was given more than sufficient due process prior to her ultimate suspension and that, even if due process was lacking, she has not shown that she was prejudiced.

¶ 31        Whether Mohorn-Mintah was afforded adequate due process in the instance case is an issue of law, and thus our review is *de novo*. *People ex rel. Devine v. $30,700.00 United States Currency*, 199 Ill. 2d 142, 155 (2002). Due process requires, at minimum, notice and a meaningful opportunity to be heard. *Colquitt v. Rich Township High School District No. 227*, 298 Ill. App. 3d 856, 863 (1998). In administrative proceedings, the notice of charges does not need to be as precise or detailed as in normal court proceedings. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 93 (1992). "The notice must be reasonably calculated to apprise interested parties of the contemplated action and to afford the interested parties an opportunity to present their objections." *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 420 (1997). "A court will find a due process violation only if there is a showing of prejudice." *Gonzalez v. Pollution Control Board*, 2011 IL App (1st) 093021, ¶ 42; see also

*Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 545 (2006) (*per curiam*) (holding that there was no showing that the delays in the plaintiff's hearing "resulted in a deprivation of plaintiff's due process rights"); *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 436 (1990) (holding that the issues of procedural due process "did not result in substantial prejudice and therefore cannot be used to establish a denial of procedural due process").

¶ 32    The dismissal charges, or notice, issued to Mohorn-Mintah did not specify that suspension without pay or a reduction of back pay was a potential outcome of the dismissal proceedings. However, she was notified of the charges against her and she was given the opportunity to be heard and defend herself at a hearing where she could cross-examine the witnesses against her and where she produced witnesses in her defense. She also had the ability to submit a posthearing memorandum of law and to submit exceptions to the hearing officer's findings. Thus, Mohorn-Mintah was given adequate and extensive procedural due process in answering the charges against her.

¶ 33    Moreover, Mohorn-Mintah's brief does not contain any assertion that her approach or defenses to the charges would have been fundamentally different had other potential disciplinary actions been included in the notice. The notice apprised her of the charges against her, which allowed her to adequately and intelligently prepare her defenses. If the Board's failure to include the possibility of other sanctions impaired Mohorn-Mintah's ability to defend herself, it is not apparent from the record or from her brief. See *Morris v. Department of Professional Regulation*, 356 Ill. App. 3d 83, 92 (2005) (finding that, even if the plaintiff was denied procedural due process where her requested subpoena was not issued, she had not

shown how she suffered prejudice thereby). For that reason, we find that Mohorn-Mintah was not prejudiced by the procedural due process afforded to her.

¶ 34　　Finally, we distinguish the cases Mohorn-Mintah cites in support of her argument that she was deprived of due process where she was subject to a different sanction than the one listed in the charges. In *Lily of the Valley Spiritual Church v. Sims*, 169 Ill. App. 3d 624, 625 (1988), and *Electronic Design & Manufacturing, Inc. v. Konopka*, 272 Ill. App. 3d 410, 415 (1995), the defendants were subject to a greater sanction, namely a permanent injunction following a temporary relief or preliminary injunction hearing. That is inapposite to what occurred here, where Mohorn-Mintah received a lesser disciplinary action. And we would note that our supreme court has stated that the procedural due process for a dismissal would not necessarily be the same as that required for a lesser sanction, such as suspension. *Spinelli*, 118 Ill. 2d at 406. Finally, Mohorn-Mintah relies on *Matthews v. Harney County, Oregon, School District No. 4*, 819 F.2d 889, 893 (9th Cir. 1987). We first note that this court is not bound by federal court cases and, moreover, the facts in that case are inapposite to those here. There, the plaintiff did not receive notice of the charges against her, and she was not given the opportunity to be heard prior to being dismissed. *Id.* Unlike the plaintiff in *Matthews*, Mohorn-Mintah received a letter detailing the charges against her and was also given the opportunity to be heard.

¶ 35　　Accordingly, Mohorn-Mintah's due process claim fails, and the Board's decision is affirmed.

¶ 36　　　　　　　　　　　　　III. CONCLUSION

¶ 37　　For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 38　　Affirmed.

**No. 1-18-2011**

| | |
|---|---|
| **Cite as:** | *Mohorn-Mintah v. Board of Education of the City of Chicago*, 2020 IL App (1st) 182011 |
| **Decision Under Review:** | Petition for review of order of the Board of Education of the City of Chicago, Nos. 18-0822-RS4, 18-0822-EX15. |
| **Attorneys for Appellant:** | Robert E. Bloch and Josiah A. Groff, of Dowd, Bloch, Bennett, Cervone, Auerbach & Yokich, of Chicago, for petitioner. |
| **Attorneys for Appellee:** | Ruth F. Masters, of MastersLaw, of Oak Park, and Joseph T. Moriarty and Lee Ann Lowder, of the Board of Education of the City of Chicago, of Chicago, for respondents Board of Education of the City of Chicago and Janice Jackson.<br><br>Lisa Madigan, Attorney General, of Chicago (Ann C. Maskaleris, Assistant Attorney General, of counsel), for other respondent. |